THE CARROLL EXCHANGE BANK, Appellant, v. THE FIRST NATIONAL BANK OF CARROLLTON, Respondent.

Kansas City Court of Appeals, May 16, 1892.

Chattel Mortgage: PAROL: WHEN GOOD: DEFENSE: STATUTE. One T., a shipper of stock, agreed with plaintiff bank, if it would honor his checks to pay for a certain shipment of stock, the stock should be considered plaintiff's, and he would dispose of them as such and turn

over the net proceeds. Plaintiff paid the checks, and T. sold the stock and deposited the proceeds in the defendant bank which had full knowledge of plaintiff's claim. After demand refused, plaintiff brought suit and defendant filed a general denial for its answer. *Held*, the transaction between T. and the plaintiff bank was in the nature of a parol mortgage, and, as between the original parties, plaintiff had the legal right to the money, which right continued against the defendant, which received it with full knowledge of plaintiff's right, and that the statute relating to mortgages of personal property will not defeat such right, as, before the defendant can be heard to allege the informality or insufficiency of the mortgage, it must show some right to question the same.

*Appeal from the Carroll Circuit Court.*—HON. J. M. DAVIS, Judge.

REVERSED AND REMANDED.

*Hale & Son* and *Pattison & Timmons*, for appellant.

(1) On these facts the question is to which party, appellant or respondent, "*ex æquo et bono*" the money belongs. This is an action for money had and received —there is no question of innocent purchaser involved. It is not an action to recover the hogs or for their conversion, but to recover money wrongfully received by defendant, after notice of plaintiff's claim. There is no similarity between the case at bar and the case of *Kollock v. Emmert & Co.*, 43 Mo. App. 566. The contract was good between the vendor and vendee, and it could only be invalidated, if at all, in favor of subsequent purchasers and creditors in good faith. *Tufts v. Thompson*, 22 Mo. App. 564; *Worley v. Watson*, 22 Mo. App. 546, and cases there cited by Judge PHILIPS. There is no evidence in this case that the First National Bank was a purchaser or creditor in good faith. *Roeder Bros. v. Brewery Co.*, 33 Mo. App. 69. The case of *Harman v. Morris*, 28 Mo. App. 326, overruling *Worley v. Watson*, and the case of *Knoop v. Distilling Co.*, 102

Mo. 156, in which section 5178 is held to include prior as well as subsequent creditors, do not change the rule as applied to this case, as there is no evidence that defendant was a creditor or purchaser, prior or subsequent. (2) The contract between Carroll Exchange Bank and Tuley was for a valuable consideration, to-wit, the payment of the checks which Tuley had drawn operated as an equitable assignment of the fund, to-wit, the three lots of hogs which were to be converted into money. Schouler on Personal Property [1 Ed.] 100; Story on Equity, sec. 1047; *Morton v. Naylor*, 1 Hill (N. Y.) 583.

*Waters & Mirick*, for respondent.

(1) The transaction between Tuley and plaintiff did not amount to a sale of the hogs to the plaintiff. *Kollock v. Emmert & Co.*, 43 Mo. App. 566. (2) If the hogs were not the property of plaintiff, then an action for money had and received will not lie to recover the proceeds in the hands of defendant. 1 Chitty on Pleading, 353. (3) The proof did not support the allegations in the petition.

GILL, J.—These litigants are two banking corporations at Carrollton, Missouri. The Exchange Bank sued the defendant National Bank for the recovery of $867.73, alleged to have been received by said defendant, and which was the property of the plaintiff. The petition, in substance, alleges: That on January 12, 1891, one W. E. Tuley purchased several bunches of hogs, and at that date had the same at the stock pens at Carrollton ready for shipment to Kansas City. Tuley gave his checks on the plaintiff bank for payment of these hogs. Having no funds to his credit in the bank, he agreed with its officers that if they would pay his

checks when presented the hogs should be considered the bank's property, that he would take them to Kansas City, there dispose of the same and turn over the net proceeds to the plaintiff. The plaintiff Exchange Bank paid these checks as they agreed, and Tuley shipped the hogs to Kansas City, and there sold the same; but instead of turning over the proceeds to plaintiff he placed the same in defendant's bank who received the same from Tuley with knowledge of the plaintiff's claim. Plaintiff demanded the money thus by it claimed, but the demand was refused, and, hence, this suit. The answer was a general denial. The evidence introduced on plaintiff's part tended to prove every substantial allegation of the petition; but at the close of plaintiff's testimony the court sustained a demurrer thereto; whereupon the plaintiff took nonsuit with leave, and brings the case here by appeal.

I. In sustaining a demurrer to plaintiff's evidence the trial court erred. The testimony well warranted a judgment in plaintiff's favor. As we view it, the transaction between Tuley and the Exchange Bank was in the nature of a parol mortgage. The bank advanced to Tuley the necessary funds to pay for the hogs, and Tuley contracted to turn over the hogs, or the proceeds when sold, to the bank as security for the money thus loaned.

Now, this parol mortgage, though invalid as to some others, was yet effective as between Tuley and this plaintiff. Unquestionably, as between the original parties the plaintiff had the legal right to the money arising from the sale of the hogs. The question is, does this right continue as against the defendant National Bank, who has received the money from Tuley with full knowledge of plaintiff's rights. As the case is now presented, we think it does, and that the rights of plaintiff are as great against the defendant as if this

suit was against Tuley who yet held the proceeds arising from the sale of the hogs.

While the statute on this subject declares that "no mortgage or deed of trust on personal property shall be valid against any *other person than the parties thereto,* unless possession of the mortgaged property be delivered to and retained by the mortgagee," etc., or unless the mortgage be executed, acknowledged, filed and recorded, etc., it is yet a "great misconception of the statute to so interpret it as to apply it to all persons indiscriminately, except the parties to the instrument, and thus permit any third person, a trespasser or wrongdoer it may be, to invoke its aid." This quotation is from *Johnson v. Jeffries,* 30 Mo. 423. In that case Johnson sued Jeffries for the recovery of a slave, which the plaintiff claimed had been mortgaged to him to protect him from loss by reason of having gone security for one Bartlett; that Johnson had been compelled to pay the debt whereby he had become entitled to the possession of the slave. On the trial plaintiff offered a writing in evidence (which was in the nature of a mortgage), but it was excluded by the court on the ground that it had not been acknowledged and recorded. But the supreme court decided this to be an error; and in the opinion uses the following language: "The deed as between the parties thereto is good, although not acknowledged and recorded, and the defendant does not appear to be in a position to claim the benefit of the statute or to question the validity of the instrument in question. The answer sets up no title in the defendant to the slave, and it discloses nothing that would preclude Johnson from using the deed as evidence of his alleged right to the property. It does not appear that Jeffries stands in any such relation to the parties to the instrument—as for instance a purchaser or

creditor—as that he would be prejudiced by giving effect to the deed.''

This language is applicable to the case at bar. Defendant by its answer makes no claim to this fund, nor is there a shadow of testimony, thus far, tending to prove that defendant has any interest in it whatever. The evidence on the part of the plaintiff simply discloses the bad faith of the man Tuley; that he agreed to turn over this money, arising from the sale of the hogs, to the plaintiff, but that instead thereof had deposited the same with the defendant, and for what purpose or on what account, does not appear. As well suggested it may be that defendant is merely holding this money for Tuley and for his account, thereby aiding Tuley, though unintentionally, in defrauding the plaintiff. What we mean to hold is, that, before defendant can be heard to allege the informality or legal insufficiency of the execution of Tuley's mortgage to the plaintiff, it must show some right to question the same.

The principle contained in the case cited of *Benoist v. Siter*, 9 Mo. 657, supports plaintiff's right to recover on the facts now disclosed in this record. In that case Siter, Price & Co. gave into the hands of one Anderson a negotiable note for collection. Anderson transferred the same to B. & H. who took it with the knowledge of Siter, Price & Co.'s ownership, and applied its value as a credit on their claim against Anderson. B. & H. were held liable to Siter, Price & Co. for the amount thereof.

The case of *Kollock v. Emmert*, 43 Mo. App. 566, has no application to the facts of this case.

Judgment reversed and cause remanded for new trial. All concur.