MARCH TERM, 1894. 17

Carroll Exch. Bk. v. First Nat. Bk. of Carrollton.

| 58 | 17 |
| 72 | 444 |

## CARROLL EXCHANGE BANK, Appellant, v. FIRST NATIONAL BANK OF CARROLLTON, Respondent.

### Kansas City Court of Appeals, April 30, 1894.

1. **Parol Mortgage**: EVIDENCE: SALE. On the evidence in this case the transaction between the plaintiff and one Tuley is at most only a parol mortgage, and not a sale.

2. **Chattel Mortgage**: UNRECORDED: SUBSEQUENT PURCHASER. Transaction by which plaintiff paid the checks of Tuley and he was to place the proceeds of the hogs purchased with the checks to the credit of the plaintiff, when he shipped them, amounts to nothing more than a chattel mortgage unacknowledged and unrecorded, and is invalid as to defendant who accepted the proceeds of the sale in partial payment of its claim against Tuley.

3. **Action**: CONTRACT: CONSIDERATION: PLEADING. An agreement by which defendant promised to make the matter all right if upon investigation it should turn out the plaintiff and not the defendant had furnished the money to pay for the hogs, will not support an action, being without consideration, and the pleading in this case would not support such recovery.

4. **Banks and Banking**: CHECK REVOKABLE: INSTRUCTION. The mere giving of a check is not payment and if drawn for a part of the deposit, the check does not operate at law or in equity as an assignment *pro tanto*. A check is an executory order and revocable before payment. An instruction as to payment to plaintiff's credit set out in the opinion, is held properly refused.

*Appeal from the Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*Pattison & Sebree* and *Hale & Son* for appellant.

(1) Appellant insists that the court erred in refusing to give the second instruction asked by plaintiff

below. This instruction is based on the theory that the plaintiff became the owner of the hogs by virtue of the contract made with Tuley, which is admitted by instruction given for defendant made on the twelfth day of January, 1891, and the payment of the checks in pursuance of the contract, and that Tuley was to ship the hogs to the firm in Kansas City, sell them on the market and turn over the proceeds to plaintiff's correspondent in that city; and that defendant received the proceeds from said hogs from said Tuley with notice of plaintiff's right thereto. This instruction is amply justified by the testimony in the cause. *McKnight v. Wells*, 1 Mo. 13; *Orman v. Shotwell*, 49 Mo. 423; *Flournoy v. Andrews*, 5 Mo. 513; *Russell v. Ins. Co.*, 55 Mo. 585; *DeVitt v. Railroad*, 50 Mo. 302. (2) If plaintiff was in fact the owner of the property, under its contract with Tuley, then defendant could not acquire title thereto, nor its proceeds, even without notice of plaintiff's claim. *Wilson v. Crockett*, 43 Mo. 216, and cases cited. *Comstock v. Hire*, 73 N. Y. 269. This sale was valid without any acts of delivery until the expiration of a reasonable time for such delivery. *Kendall Boot and Shoe Co. v. Bain*, 46 Mo. App. 595; *Greenwood v. Burns*, 50 Mo. 52; *Wheeler & Wilson v. Givan*, 65 Mo. 92, 93. (3) The court erred in refusing to give instructions 4 and 5 asked by plaintiff. These instructions are based on the fact that the defendant, when first applied to by Carroll Exchange Bank in regard to the proceeds of the hogs, claimed said hogs or their proceeds solely on the ground that they had paid for said hogs for Tuley, and agreed to pay said proceeds to plaintiff if it turned out on investigation that plaintiff had in fact paid for said hogs as claimed. *Benoist & Hackney v. Siter, Prue & Co.*, 9 Mo. 657; see, also, opinion of this court in this cause, 50 Mo. App. 92; *Dumond v. Carpenter*, 3 Johns. (N. Y.)

MARCH TERM, 1894. 19

Carroll Exch. Bk. v. First Nat. Bk. of Carrollton.

183; *Weston v. Carpenter*, 12 Johns. (N. Y.) 276; *Van Allen v. Bank*, 52 N. Y. 11; *Heard v. Bradford*, 4 Mass. 326; *Appleton v. Crowenshuld*, 8 Mass. 246; *Hall v. Marston*, 17 Mass. 575. (4) The court erred in refusing to give the sixth and seventh instructions asked for the plaintiff. *Bell & Son v. Simpson*, 75 Mo. 485; *Bank v. Bank*, 3 Mo. App. 371; Am. and Eng. Encyclopedia, 18, 19, 20, and cases cited, note 1; *Taylor v. Sangrain*, 1 Mo. App. 312. (5) The court erred in refusing to give the eighth instruction asked by plaintiff. *Phillips v. Francessus*, 52 Mo. 370; *Albers v. Bank*, 85 Mo. 173; *Baker v. N. Y. National*, 100 N. Y. 31, 32. (6) The defendant, which claims as a subsequent assignor, could not obtain "greater title thereto or interest therein, than the person had from whom it was acquired." And to apply that doctrine to this case defendant could only acquire whatever title or interest which Tuley had in the proceeds of the hogs, which was, as Tuley himself stated at the time of the transfer to plaintiff, the profits which might be made on the transaction. *France v. Thomas*, 86 Mo. 84, 85; 2 Schooler on Per. Prop., par. 209; *Smith v. Sterritt*, 24 Mo. 262; see, also, *Comstock v. Hire*, 73 N. Y. 269; see, also, 1 Schooler Per. Prop. [1 Ed.], p. 100; see, also, Story Eq., sec. 1047; *Morton v. Naylor*, 1 Hill (N. Y.), 583; Adams Eq. Juris. [3 Am. Ed.], t. p. 148; see, also, *Des Moines Co. v. Hinckley*, 62 Iowa, 637; *Brokam v. Brewka*, 41 N. J. Eq. 215.

*James F. Graham, Ferd. G. Long* and *L. H. Waters* for respondent.

(1) The transaction between Tuley and plaintiff was in the nature of a parol mortgage. It was so held by this court when this case was here, before on the same evidence. *Carroll Bank v. First National Bank*,

50 Mo. App. 93. If the transaction was intended to secure plaintiff in the payment of Tuley's checks it was a mortgage. *Turner v. Kerr*, 44 Mo. 429; *Slowey v. McMurray*, 27 Mo. 113. (2) If the transaction was in the nature of a parol mortgage then it was void as to purchasers and creditors whether they had notice or not. R. S. 1889, sec. 5176; *Rawlings v. Bean*, 80 Mo. App. 614; *Hughes v. Menefee*, 29 Mo. App. 192; *Bevans v. Bolton*, 31 Mo. App. 437. Any creditor of Tuley's was permitted to secure his debt by purchasing the hogs or securing the proceeds, even with notice of plaintiff's claim. *Morgan v. Wood*, 38 Mo. App. 255; *Schroeder v. Mason*, 25 Mo. App. 190; *Meyerberg v. Jacobs*, 40 Mo. App. 136. (3) The transaction between Tuley and the plaintiff contained none of the elements of a valid sale. There was no delivery of hogs to plaintiff and there was no arrangement that they should ever be delivered. Rea testified that Tuley was to place the proceeds to the bank's credit in Kansas City. Revised Statutes, 1889, section 5178; *Stewart v. Burgstrom*, 79 Mo. 524; *Wright v. McCormick*, 67 Mo. 426; *Burgett v. Borchert*, 59 Mo. 80; *Claflin v. Rosenberg*, 42 Mo. 439; *Kollock v. Emmert & Co.*, 43 Mo. App. 566. (4) At the time the proceeds of the sale of the hogs were turned over to defendant by Tuley's directions, the latter was indebted to defendant in the sum of $875.98, and the proceeds, amounting to $867.73, when received, were applied towards the payment of that account. (5) If defendant's instruction was properly given it follows that the plaintiff's second, fourth, fifth, sixth and eighth instructions were properly refused, unless the plaintiff was entitled to recover on the alleged promise of the president of the defendant bank, that he would look into the matter and fix it. No action could be maintained for the breach of such promise. There was no

consideration for the promise; and the president of the bank had no authority to bind the land thereby. In no event could a recovery on such a promise be had on the petition in this case.

GILL, J.—This case is here on a second appeal. Its former disposition is reported in 50 Mo. App. 92. At the first trial the circuit court sustained a demurrer to plaintiff's evidence, and this ruling we held erroneous for reasons stated in the opinion. After the cause was remanded the defendant amended its answer and a full hearing was had with evidence for both sides. The defendant again prevailed and the plaintiff has the second time appealed to this court.

I.   The cause may now be disposed of on facts which we think are practically undisputed.

In January, 1891, one Tuley, a stock trader, purchased from different parties in the vicinity of Carrollton, one hundred and six head of hogs, for the aggregate sum of $938.40, and gave therefor his checks on the plaintiff Exchange Bank. Tuley had nothing to his credit in said bank and, besides, was then owing the defendant First National Bank $875 on an overdraft for a like purchase the week before. The one hundred and six hogs were brought to Carrollton, January 12, 1891, and put in the stock pens ready for shipment to Kansas City. On that day, he (Tuley) went to the plaintiff bank, and as to what arrangement was then and there made, we quote the testimony of Rea, the cashier.

"Q.   Tell the jury first what he (Tuley) wanted you to do?   A. Well, he wanted us to pay for the hogs, and he wanted us to understand, too, that the title in the hogs would be ours absolutely, or virtually you might say, and he really thought all the interest he had in them was the profits, if any, and he knew he had no

money with us; he knew we were paying for them.
He just said he had no interest in the hogs only the
profits; and he wanted us to pay for the hogs.

"*Q.* And the hogs were to be yours?  *A.* To be
ours, and the proceeds to be turned over to our credit
in the Kansas City Bank, our correspondent.

"*Q.* Now state to the jury why you paid those
checks, or agreed to pay those checks.  *A.* On the
express understanding that the proceeds would come
back to us, and that he had no interest in them other
than the profits."

His testimony on cross-examination was as follows:

"*Q.* And he agreed if you would honor the
checks the hogs would be yours?  *A.* Yes, sir.

"*Q.* And that he would ship them to Kansas
City, or were you to take them at the pens?  *A.* No,
sir. He was to deliver them up there; deliver the
proceeds to our credit there.

"*Q.* At Kansas City and place the proceeds to
your credit?  *A.* Yes, sir.  *Q.* And on that agree-
ment and in consideration of that agreement, you did
accept and pay his checks?  *A.* Yes, sir.

"*Q.* Were you sworn as a witness on the trial of
this cause at the July term, 1891?  *A.* I expect I was.

"*Q.* I will ask you if you were not asked this ques-
tion: 'Was there anything said about the hogs being
your property after being paid for?' and didn't you
answer in this way: 'He merely said that if we paid for
the hogs the proceeds would be turned over in Kansas
City; we therefore paid the checks, as they were pre-
sented;' now did you swear to that?  *A.* I don't know.
I expect I did.

"*Q.* Was that the truth; was that substantially
your recollection of it?  *A.* Both of them are true as
far as that is concerned, because he said all the interest
he had in them was the profit, if any.

"*Q.* I am asking you if you swore to this; now let me read the question again and take your time: 'Was there anything said about the hogs being your property after being paid for?' You were asked that question, weren't you? *A.* I don't remember whether I was or not; I expect I was, though.

"*Q.* And didn't you answer it in this way: 'He merely said that if we paid for the hogs the proceeds would be turned over in Kansas City; we therefore paid the checks as they were presented.' Didn't you swear to that, Mr. Rea, as I have read? *A.* I guess I did, and I swear to this other, too; they are both the same.

"*Q.* And you swear the same way now? *A.* I say, all the interest he had in them was the profits, if any; and the balance was ours; of course the hogs were ours.

"*Q.* And the balance was yours? *A.* Yes, sir.

"*Q.* Did you ever see the hogs? *A.* I don't know whether I ever did or not; possibly I have.

"*Q.* You don't know it if you ever did? *A.* No, sir.

"*Q.* Did he turn them over to you on that day or any other day? *A.* He didn't deliver the hogs to me.

"*Q.* Whose name were they to be shipped in? *A.* They were to be shipped in his own, I presume."

Notwithstanding the evident disposition of this witness to make of this transaction an absolute purchase of the hogs from Tuley, it was clearly nothing of the kind, and was not so intended. At most it was only a parol mortgage, as we held when the case was here before. The sum and substance of the arrangement was, that the Exchange Bank should advance the necessary funds to pay Tuley's checks then out, and to secure this amount, or to make good the overdraft, Tuley promised that when he sold his hogs in Kansas City, he

would turn the proceeds into the plaintiff bank. It is also shown by the evidence that this overdraft by Tuley on plaintiff bank was all the time treated as a loan of money and not as a consideration for purchase of the hogs. The bank charged it to him on account and subsequently took Tuley's note therefor which the plaintiff held at the trial of the cause.

Now further, on this same January 12, 1891 (and whether before or after the above named agreement does not appear), Tuley gave to the defendant bank an order on his commission firm at Kansas City whereby they were directed to pay the proceeds of these same hogs over to said defendant. Tuley shipped the hogs to Kansas City; they were sold by his agents, and the proceeds in pursuance of his orders, were turned over to the defendant, who applied the same towards the payment of his overdraft due said bank.

Under this state of facts, the legal right of the defendant to retain the money in controversy is plain. The plaintiff occupies the attitude of one claiming under a chattel mortgage which was not only unacknowledged and unrecorded, but was, in fact, never reduced to writing. It was, therefore, invalid as to the defendant, who accepted the proceeds of the sale of the property in partial payment of its claim against the alleged mortgagor. The defendant's instruction number 1 was a correct declaration of the law and was properly given. Indeed the court would have been justified in a peremptory instruction for the defendant. When the case was before us at a former hearing, such an instruction was held improper because there was no evidence tending to prove that defendant bank had any interest in the fund in dispute. But on a new trial this has been cured and defendant's interest has been alleged and clearly shown.

II. Plaintiff further asserts some claim to this money by virtue of the testimony of its cashier tending to prove that, on the day the proceeds of the hogs were turned over to the defendant bank, he demanded the same, and that the defendant's president said he "would fix it," or "make it all right," if, on investigation, it should turn out that the plaintiff bank and not the defendant had furnished the money to pay for the hogs. Conceding this evidence as tending to prove a positive promise by defendant to pay over the money to plaintiff, and yet it can furnish no ground for recovery in this action. For, in the first place, this is not an action based on such an obligation, and, in the second place, if it was in the range of the pleadings, then the promise was clearly a *nudum pactum*, and no action could be maintained thereon. The court then rightly refused plaintiff's instructions numbers 4, 5, 6 and 7.

III. It seems that when the hogs were sold in Kansas City, Tuley, who was present at the time, first directed the commission agents to place the proceeds of one car to the credit of the Exchange Bank and the other car to the credit of the defendant bank. In pursuance of this instruction, the agents deposited their checks in the Kansas City banks keeping accounts with the Carrollton banks. But before the checks were paid, or had been presented or passed through the clearing house, the commission agents, on the order of Tuley, withdrew said two checks and then deposited the entire amount to the credit of the defendant bank. Applying to this feature of the case, plaintiff asked the following instruction: "8. If the jury find from the evidence that the commission house, by the direction of said Tuley, after the sale of said hogs, paid over to the credit of plaintiff the proceeds of one carload of hogs, to wit, the sum of $363.44, and that said pay-

ment was in pursuance of the previous agreement made by said Tuley with plaintiff, as stated in the other instructions, and that said payment to the credit of plaintiff was afterwards changed and recalled by the commission house by direction of said Tuley and the same paid over to the credit of defendant, then the jury will find for the plaintiff as to that amount,'' which the court refused to give and of such action the plaintiff complains.

Since the evidence shows conclusively that there was no payment to the plaintiff by the commission house, the court committed no error in refusing this instruction. The mere giving a check is not a payment. A bank check drawn for a part of the drawer's deposit does not operate either at law or in equity as an assignment or appropriation of the deposit *pro tanto*, or confer any lien upon it. *Dickinson v. Coates*, 79 Mo. 250. ''A check is simply a written order of a depositor to his bank to make a certain payment. It is executory, and, as such, it is of course revocable at any time before the bank has paid, or committed itself to pay it.'' 1 Morse on Banking [3 Ed.], sec. 398; *Albers v. Commercial Bank*, 85 Mo. 173; Van Schaack on Bank Checks, p. 83. ''It is competent for the drawer of a check to revoke the authority which he has given to the bank to apply his funds to the payment of it. He may at any time before acceptance or payment countermand the check.'' Boone on Banking, sec. 198.

The undisputed facts here are, that Tuley's commission agents, on the morning of January 16, gave plaintiff's Kansas City corespondent a check on another bank for $363, but shortly thereafter, and before such check had been presented, the drawer revoked and countermanded the same and took it up. This the drawer had a perfect right to do. The check was a

mere order, executory in its nature, and the drawer had full power and authority to revoke it before acted upon by the drawee; and, being countermanded and taken up, the matter stood as though no check had been given.

Under the law the judgment is for the right party and will be affirmed. All concur.