BARTON BROTHERS, Respondents, v. M. P. HUNTER, Defendant; A. WALLENSTEIN, Appellant.

**Kansas City Court of Appeals, December 3, 1894.**

1. **Attachment:** EQUITIES: LOSS OF LIEN. Attaching creditors, who, as against their common debtor, have equal claims, must depend upon strict law, the equities being equal. If one loses an acquired priority, the junior lien then takes precedence. A senior lien may be lost by settlement out of court.

2. **Attorney and Client:** POWER CONFERRED. Respondent's letter, set out in the opinion, conferred no power on their attorneys to settle and discontinue the action, and the attorneys had no implied authority so to do.

3. **Contract:** AGGREGATIO MENTIUM. On the facts in this case, it is *held* that there was no meeting of minds which is an essential element of every contract, and without which it can not have validity.

4. **Payment:** CHECK. Unless it is expressly agreed that a check shall be payment, there is no payment until such check has been paid.

5. **Accord and Satisfaction:** BAR. Accord without satisfaction is no bar; and to constitute a bar the accord must be executed and not executory.

6. **Attachment:** SUBROGATION: PURCHASER. The purchaser of a claim in favor of which an attachment is pending, would be subrogated to the attachment rights of the vendor, and that without formal assignment.

7. ———: PAYMENT OF CLAIM: MORTGAGE CREDITORS. The payment of an attachment claim by a mortgage creditor is not an extinguishment thereof.

*Appeal from the Carroll Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

*Lozier & Morris* for appellant.

(1) The action of the first attaching creditors operated as an abandonment of their attachment proceedings, and the attached property was thereby released from the attachment lien. An attaching creditor who loses a priority once acquired is without relief, as against a junior attaching creditor, as the equities are equal and depend upon a substantial compliance with the law, and any departure from its forms for the purpose of accelerating the remedy operates as a dissolution of the attachment, destroys the lien and lets in another creditor. Drake on Attachment [6 Ed.], p. 250, sec. 262; Waples on Attachment, pp. 479, 490 *et seq.;* 1 Wade on Attachment, p. 414, sec. 220; *Gilbert v. Gilbert,* 33 Mo. App. 259; *Adler v. Anderson,* 42 Mo. App. 109; *Burnham v. Blank,* 49 Mo. App. 56; *Bank v. McDonald,* 46 Mo. 31; *Iron Co. v. Gleason,* 24 Ver. 228; *Suydam v. Huggerford,* 23 Pick. 465; *Taylor v. Mixter,* 11 Pick. 341; *Stone v. Miller,* 62 Barb. 430; *Alley v. Myers,* 2 Tenn. Ch. 206; *Hall v. Walbridge,* 2 Aikens, 215; *Murray v. Eldridge,* 2 Ver. 388; *Carter v. Shampion,* 8 Conn. 549; *Cole v. Wooster,* 2 Conn. 203; *Page v. Jewett,* 46 N. H. 441; *Clark v. Foxcraft,* 7 Me. 348; *Jaffrey v. Claflin Co.,* 24 S. W. Rep. 761; *Lowry v. McGee,* 75 Ind. 508. (2) There were no conditions coupled with the acceptance of the check, nor were any objections made to the form of payment. Where the parties so intend and, as in this case, a receipt is given, showing that it is accepted in full payment, such check is an absolute payment and the debt is thereby dis-

charged. *Rice v. Dudley*, 34 Mo. App. 383; *Newcomb v. Jones*, 37 Mo. App. 475; *Morrison v. McCartney*, 30 Mo. 188; Daniels on Neg. Inst., sec. 1646; *Warrensburg v. Zoll*, 83 Mo. 94; *Adams v. Helm*, 55 Mo. 468; *Bailey v. Partridge*, 27 N. E. Rep. (Ill.), 89, affirming 35 Ill. App. 121. (3) It was not necessary to formally dismiss the attachment. An agreement to release an attachment may not always be susceptible of direct proof, but should be determined from all the facts in evidence and accompanying circumstances. Moreover, the action was founded on debt, and if the debt was paid, no lien would continue on the goods. Plaintiff's action might work a release of attachment without the debt being paid, but the debt could not be paid without a forfeiture of the attachment lien. *Brown v. Kirk*, 20 Mo. App. 524; *Rice v. Dudley*, 34 Mo. App. 383. (4) The attorneys had authority, by virtue of employment, to do all things in and out of court incidental to the prosecution of the suit and which affects the remedy only and not the cause of action. They may, without special authority of the client, dismiss a suit and discharge property from lien of attachment, as the dismissal does not affect the cause of action, but only the remedy. Moreover, the attorneys had special authority in case at bar. *Davis v. Ball*, 90 Mo. 664; *Howell v. Caryl*, 50 Mo. App. 452, and cases cited.

*Karnes, Holmes & Krauthoff* for respondents.

(1) The giving of a check or note does not constitute payment of a debt, unless it is expressly agreed at the time that it shall constitute payment. *State ex rel. Crider v. Wagers*, 47 Mo. App. 438, and cases cited. As a matter of fact, the check was not accepted by Mr. Timmons in payment. A check or note constitutes no lien or assignment of fund drawn upon. *Dickinson v.*

*Coates*, 79 Mo. 250, and cases cited. It is only payment when paid. *Appleton v. Kennon*, 19 Mo. 641, 642; *Block, Adm'r, v. Dorman*, 51 Mo. 32; *Montgomery Co. v. Auchley*, 103 Mo. 506, and cases cited; *Davis v. Hall*, 90 Mo. 665, and cases cited. (2) His only authority to settle the matter, so far as the evidence discloses, was the contents of that letter in evidence. That letter and what Mr. Timmons did with Limbert must be read together as one and the same transaction. and they must stand or fall together. *Noel. v. Gaines*, 68 Mo. 663; *Sexton v. Anderson*, 95 Mo. 380. Mr. Timmons was a special agent, acting alone under specific instructions contained in said letter. A person dealing with agents having special authority or with special agents must take notice of the extent of his authority. *Ayres v. Nilroy*, 53 Mo. 523; *Chouteau v. Filley*, 50 Mo. 174, 175. Mr. Timmons had no right to receive check for his principal. He was only authorized to receive money. *Buckwalter v. Craig*, 55 Mo. 71, 72. Even though Mr. Timmons had actually received the $350 in cash of Limbert, it would not have released the attachment lien of respondents, for they give him specific instructions in their letter, "Under no circumtances assign our claim or release our attachment, unless Hunter and both mortgagees release us from liabilities under bond." (3) As an attorney, Mr. Timmons had no implied authority to settle or compromise the claim of Barton Brothers. *Davis v. Hall*, 90 Mo. 659, 665; *Lewis v. Baker*, 24 Mo. App. 682, 685. (4) It is self-evident that Limbert, being a mortgagee of the attached property and not acting on behalf of the execution debtor, intended to purchase the claim of Barton Brothers, not to pay it. And such intention will be enforced by the courts. *Campbell v. Allen*, 38 Mo. App. 27, 31; *Thompson v. Longan*, 42 Mo. App. 146, 154. 2 Beach, Mod. Eq. Jur., sec. 804. "In such case no formal assign-

ment is necessary." *Ib.*, sec. 805; see, also, 24 Am. and Eng. Encyclopedia of Law, pp. 269, 270; Sheldon on Subrogation, sec. 12; *Allen v. Dermott*, 80 Mo. 56, 59. (5) "The general rule is that accord without satisfaction is no bar." 2 Chitty Cont. [11 Am. Ed.], p. 1122; 5 Lawson Rights, Rem. and Pr., sec. 2567; 1 Am. and Eng. Encyclopedia of Law, pp. 94, 95; 1 Smith's Lead. Cas. [8 Am. Ed.], 644 (note by Judge Hare).

SMITH, P. J.—It appears from the record before us that on the tenth day of November, 1892, the respondents commenced a suit by attachment on an account against M. P. Hunter and caused a certain stock of merchandise to be levied upon under the writ. A few days thereafter the appellant Wallenstein brought a similar suit against Hunter, also causing a levy of his writ on the same stock of merchandise. These suits were respectively prosecuted to judgment.

While the attachment suits were still pending, one Limbert, who had a chattel mortgage on the attached property, sought to purchase the claim of the respondents, and to that end opened, through an agent, negotiations with them. The result was that the respondents wrote to their attorneys as follows, to wit:

"KANSAS CITY, Mo., Nov. 22, 1892.

"*Messrs. Pattison & Timmons, Att'ys, Carrollton, Mo.*

"GENTLEMEN: Last Saturday just after your Mr. Pattison left our office, Mr. G. D. Viles, of Norborne, came in to see us about the Hunter account, and we made him a proposition to take $350 for the claim, and they pay the costs. We wish you would fix this matter up and assign our claim to Mr. Viles or to whomever he desires upon payment of the $350 to you and the settlement of all costs, including rent, advertising and all other costs. Do not fail before making the assign-

ment to get a release on our attachment bond so there can be no trouble hereafter on that.

"[Signed]    BARTON BROS."

After the receipt of this letter, Limbert met respondents' attorneys and the sheriff, and in settlement of the respondents' claim delivered the respondents' attorneys a check for $350 and also gave the sheriff a check for the costs that had accrued in the attachment suit.  The respondents' attorneys and the sheriff each thereupon gave Limbert a receipt, but exactly what was stated in these receipts does not appear.  As soon as the checks and receipts were exchanged, Limbert demanded of the sheriff the keys of the house in which the merchandise was contained. The sheriff said that this he could not do for the reason he had another attachment on the goods in favor of appellant, for about $400.  Limbert then said, "I did not know that.  Why did you not tell me?"  The sheriff then remarked, "Well, I thought you knew it."  Limbert then replied, "If I had known it I would not have undertaken to make any kind of settlement. I want my checks back."  The sheriff then remarked, "We don't want to take advantage of you; if you did not know, why, here is your check back."  The respondents' attorneys told Mr. Limbert the same thing, and thereupon the checks and receipts were re-exchanged, and thus the matter ended.  There was no order for the release of the merchandise from the levy of the attachment.  One of respondents' attorneys, Mr. Timmons, who acted for plaintiffs in the matter, testified that he did not take the check as full payment of respondents' claims.  He took it as an ordinary business transaction without knowing anything of the pecuniary circumstances of Mr. Limbert.

On substantially this state of facts Wallenstein filed his motion in the court where the said judgments

in attachment had been rendered, for an order post-
poning the attachment of the plaintiffs to that of him-
self and declaring his attachment a prior lien on the
attached property, and as to him that the attachment
of plaintiffs be held invalid and that the sheriff be
ordered to pay over the proceeds of the sale of the
attached property to him, upon the distinct grounds
that the respondents' claim had been "settled out of,
and independent of the aid of, the court and its rules
of procedure, merely voluntarily abandoning their
attachment and collecting their debt independent and
regardless thereof, whereby respondents had lost and
surrendered their lien upon the attached property
and [the lien of appellant had become the first lien
thereon." The judgment of the court was for respond-
ents, and from which appellant appealed.

It is the well settled law of this and some of the
other states, as will be seen by reference to the authori-
ties cited in the brief of the counsel for appellant,
that the right of attaching creditors, who, as against
their common debtor, have equal claims to satisfaction
of their debts, must depend upon strict law, and if one
loses a priority ever acquired, by want of regularity or
legal diligence in his proceedings, it is a case where no
equitable principles can afford relief; it is a case where
the equities are equal, and the right must be governed
by the rule of law. If the first attacher once loses his
lien, the rights of the junior attachers intervene and
the lien of the latter takes precedence. The first lien
may be lost in many ways without regard to the good
or bad faith of the parties. It will be postponed to
the junior attachment liens if the action is not prose-
cuted to a judgment; that is to say, settled out of court
and the suit discontinued. *Adler v. Anderson*, 42 Mo.
App. 189; *Burnham v. Blank*, 49 Mo. App. 56; *Branden*

*Iron Co. v. Gleason,* 24 Vt. 228; *Taylor v. Mixter,* 11 Pick. 341.

There would be much force in the contention of the counsel for the appellant were it not that it is based on what we think to be a false assumption of a fact, to wit, that the respondent's action was settled out of court and discontinued. Evidently the trial court found such was not the fact. In the first place, the evidence conclusively discloses that there was not that meeting of minds or concurrent assent of the parties which is an essential element of every contract, without which it can not have validity.

The respondents by their letter authorized their attorneys to assign their claim to Mr. Limbert. This they had a legal right to do, pending their action therein. R. S., sec. 2204. They did not authorize a settlement and discontinuance of their action. If their attorneys undertook to do so, it was manifestly beyond the power conferred by the letter. The latter had not, as attorneys for respondents, any implied authority to settle or compromise plaintiffs' claim. *Lewis v. Baker,* 24 Mo. App. 682; *Davis v. Hall,* 90 Mo. 659. So that, in so far as the respondents' attorneys undertook to settle or compromise respondents' claim, their action did not bind them. The respondents neither settled nor authorized a settlement and dismissal of their action out of court. It inevitably results that a settlement of the respondents' claim was not made or attempted to be made by respondents or by anyone having authority to do so for them. If the intention of Mr. Limbert was to settle the respondents' claim by paying a certain sum of money and thus obtaining a discontinuance of the action, the respondents did not in any way assent to that. Such an intent, it is plain, if it existed, was only in the mind of Mr. Limbert and possibly in that

of respondents' attorneys who neither had any express or implied authority to bind respondents thereby.

But if respondents' attorneys had authority, either express or implied, as they had not, to bind respondents by a settlement of their claim, still we are unable to perceive that there was a settlement of the attachment suit made out of court by plaintiffs' attorneys and Mr. Limbert. Mr. Limbert paid no money. He only gave his check for the amount which he proposed to pay. It was not expressly agreed that the check should be accepted as payment of the amount. Until it was paid there could not be said to have been a payment. *State v. Wagers*, 47 Mo. App. 438; *Appleton v. Kennon*, 19 Mo. 641; *Block v. Dorman*, 51 Mo. 32. If the contention be that the transaction in question constituted an accord and satisfaction, it can not be upheld on that ground, for the reason that "accord without satisfaction is no bar." 2 Chitty on Contracts [11 Am. Ed.], 1122. Not only this, but accord and satisfaction to constitute a bar must be full, perfect and complete. The accord must be executed, not executory. 5 Lawson's Rights, Rem. & Pr., sec. 2567; Smith's Leading Cases [8 Am. Ed.], 644. (Note by Judge Hare). If the transaction between respondents' attorneys and Mr. Limbert had been completed upon principle, its effect would have been that Mr. Limbert would have been subrogated to the rights of respondents in respect to the subject-matter of the attachment. 2 Beach, Mod. Eq. Jur., sec. 804. And to accomplish this no formal assignment would have been necessary. 2 Beach, Mod. Eq. Jur., sec. 805; Sheldon on Subrogation, sec. 12. The alleged payment, it must be remembered, was not made by Hunter, the common debtor, but by a mortgage creditor; and such payment by the former would not have worked an extinguishment of the claims of the respondents. *Allen v. McDer-*

*mott*, 80 Mo. 56; It is clear to us from all the evidence that Mr. Limbert would not have opened negotiations for the acquisition of the respondents' claim, had it not been that he was under the impression that theirs was the only attachment on the stock of merchandise of their common debtor, and ascertaining during the negotiation and before he had made payment that another attachment has been laid on the said stock of merchandise, he terminated the negotiation at that point as he undoubtedly had the right to do, and thus the transaction undertaken fell through and was never completed. There was not that meeting of minds which was necessary to constitute an executed agreement between even respondents' attorneys and Mr. Limbert. The latter, finding out his mistake, abandoned his intention to acquire the claim of respondents. The transaction when viewed in its entirety was so imperfect and incomplete that it did not have the effect for which the appellant contends.

We are unable to discover any principle that would justify us in declaring that the attachment lien of the respondents ought to be postponed to that of the appellant. We can find no fault with the judgment of the trial court upon the appellant's motion, and so affirm the same. All concur.