JAMES E. MAXWELL ET AL., RESPONDENTS, v. HARRY A. DURHAM, APPELLANT.[*]

Kansas City Court of Appeals. June 27, 1927.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2537, p. 645, n. 52; section 2853, p. 876, n. 78; section 2854, p. 882, n. 22; section 3056, p. 1067, n. 10; Bills and Notes, 8CJ, section 752, p. 539, n. 17; Payment, 30Cyc, p. 1207, n. 96.

*J. Walter Farrar, William B. Bostian* and *R. R. Brewster* for respondent.

*C. O. French* and *Milton Schwind* for appellant.

ARNOLD, J.—This is an action to recover for the purchase price of seventy head of cattle. The facts of record are that plaintiffs were partners and dealt in livestock at the Live Stock Exchange in Kansas City, Mo., and were members of the Traders Exchange, an association of traders and dealers, a separate organization from the Live Stock Exchange, composed of men engaged in buying and selling livestock on commission, the chief difference between the Traders Exchange and the Live Stock Exchange being that the members of the former buy and sell cattle to farmers, feeders and others on their own account, while the latter operate as agents for either the buyer or seller, charging a commission therefor.

Defendant was a farmer, stockman and feeder, living near Wapello, Iowa. On March 4, 1919, as shown by plaintiff's testimony, defendant with a friend, one Loeb, appeared late in the afternoon at the pens at the Stock Yards in Kansas City, Mo., where the plaintiffs had some ninety to ninety-five head of cattle, and there examined the same and entered into conversation with one Ed. Mahoney, a salesman for plaintiffs. After examining the said cattle, defendant left the pens

saying he would be back the next morning; that defendant did appear the following morning, at which time there was some bickering and bidding on the price of the cattle.

Mahoney further testified that no one took any part in the conversation but the witness and the defendant; that seventy steers were sold to the defendant at $11.10 per hundredweight; that between eighty-five and ninety-five steers were in the pens, out of which the seventy were purchased; that after the price was agreed upon between Mahoney and defendant, the latter said, "I am going to find Mr. Palmer, and have him come down and select them, to get the best out of them;" that it was defendant's right to select the best from the lot in the pens.

It appears that Palmer was an order buyer for Zook & Zook Live Stock Commission Company, and defendant wanted Palmer to come down and cull out the cattle; that after the sale had been made, defendant had the cattle turned over to Zook & Zook Live Stock Comm. Co., that the cattle were weighed by plaintiffs and then turned over to the Stock Yards Company.

On cross-examination this witness testified that on March 4th he had this conversation with defendant, and not until after the cattle were bought, the next day, did defendant say anything about Mr. Palmer. This testimony was contradicted in some material matters by defendant who was a witness in his own behalf, stating that he first met Mahoney on March 4, 1919, at about 4:30 P. M.; that he did not know plaintiffs before that time; that he and his friend, Loeb, were at that time just looking through the pens to pick up a load of cattle; that Mahoney asked him if he wanted to buy some cattle, and he said he was going to buy, but that it was too late that day; that he would come down the next morning with Mr. Palmer; that Zook & Zook arranged to buy the cattle for him; that he had known that firm for six or eight years, but this was the first time he had had any business transaction with them, though the firm had bought cattle for his neighbors for a long time; that Palmer bought the seventy head involved in this suit for him; that Mahoney and Palmer did the talking, in his presence; that he and Palmer walked away, and he told Palmer to raise the price "a dime," and the cattle were purchased at $11.10 per hundredweight, that he did not see the cattle again until their delivery to him in Iowa; that he gave Zook & Zook a check for them, either on the 7th or 6th of March, 1919, he believed the 6th, payable to Zook & Zook; that the same was deposited by Zook & Zook in the Drovers National Bank of Kansas City; that he stopped payment on the check and said bank brought suit against him in the United States District Court in Iowa, and by judgment in said court, he was required to pay the check, which he did; that he saw Mahoney in Wapello, Iowa, a day or two after he received the cattle; that plaintiffs herein brought a replevin suit for the cattle in Iowa and that the

same remained pending quite awhile, and was finally dismissed, after the termination of said suit in the United States District Court; that witness never directly bought any cattle for himself, but always had a commission firm buy them for him.

Aside from the above, there seems to be little, if any, material conflict in the evidence. It appears that after the cattle were weighed by plaintiffs, a scale ticket was sent up, giving the name of the seller and purchaser, the number of head sold, the weight and price; that the cattle were weighed and billed by Maxwell and Stewart to Zook & Zook account of Harry A. Dunham; that the scale ticket comes in duplicate; the ticket and clearance of title were attached to the bill for the delivery of the cattle, the original ticket pinned thereto and put in the clearing house or post office maintained by the members of the two exchanges above mentioned, for convenience in expediting business. Through the same source, plaintiffs received a check executed by Zook & Zook for the price of the cattle, $5167.05, drawn on the Drovers National Bank of Kansas City, Missouri. This check was deposited by plaintiffs about four P. M. on the day of its receipt, in the Interstate National Bank, the regular depository of plaintiffs, to their credit. It appears that plaintiffs, if necessary, make two deposits daily. All checks and money received prior to ten A. M. are deposited at that hour, and all such received after ten A. M. and up to four P. M. are deposited at the last-named hour. It is in evidence that the check in question was received by plaintiffs, in the manner above detailed, after ten A. M. on March 6th, and was therefore included in the four P. M. deposit on that day. The clearing house meets at 11:30 A. M. daily, and the check, which went through the clearing house on March 7th, was presented at about noon on that day. In the meantime, Zook & Zook had failed, and the check was not paid for lack of funds. This suit for the price of the cattle followed.

The petition, after alleging the business *status* of plaintiffs as partners, and that they were engaged in the business of buying and selling cattle at the stock yards in Kansas City, Mo., charges that on March 5, 1919, plaintiffs sold to defendant seventy head of cattle, the same being purchased by defendant personally, and also by and through defendant's agent, Zook & Zook Live Stock Commission Co., that at the time said cattle were purchased from plaintiffs by defendant, defendant's agent, Zook & Zook Live Stock Commission Co., gave and delivered to plaintiffs their check for $5167.05, representing the price of said cattle; that the same was received by plaintiff, conditioned upon the same being paid when presented, and said cattle were thereupon delivered to defendant; that when said check in the course of business was presented to the bank upon which it was drawn, the same was dishonored and protested; that said check was without value, and defendant has refused and neglected and still neglects and refuses

to pay plaintiff the purchase price of said cattle; that demand has been made for the return of said cattle or payment therefor, which said demand has been refused. Judgment for $5167.05 and interest from March 5, 1919, is demanded.

The answer is first a general denial; admits the *status* of plaintiffs and Zook & Zook, as alleged in the petition; that on March 5, 1919, defendant purchased at the Kansas City Stock Yards seventy head of cattle belonging to plaintiffs; that he purchased same from Zook & Zook Live Stock Commission Co., or that said Zook & Zook purchased same for defendant; that defendant was present when the sale was agreed upon between plaintiffs and said Commission Co., and that defendant agreed to take said cattle at the price agreed upon. The answer denies that defendant had any dealings of any kind with plaintiffs with reference to said cattle; and that all his dealings relative thereto were with said Zook & Zook Live Stock Commission Co., that said cattle were shipped to defendant by said Zook & Zook Commission Co., who rendered a bill of sale to defendant, charging him the price therefor, together with their commission; that on March 5, 1919, defendant gave to said Zook & Zook Live Stock Commission Co. his check for the price of said cattle, including said commission, which check defendant paid; that plaintiffs delivered said cattle to Zook & Zook Company and charged the same on their books to said Zook & Zook Live Stock Commission Co., and rendered to them their account of sale and bill for the price thereof, and received and accepted the check of Zook & Zook Live Stock Commission Co. in full for the said purchase price, with full knowledge that defendant was paying said Zook & Zook Live Stock Commission Co. for said cattle; that plaintiffs elected to look to Zook & Zook Live Stock Commission Co. for payment for said cattle and not to defendant, and plaintiffs are by said conduct estopped to claim defendant as their debtor, and to demand payment from defendant.

The answer further alleges that on said March 5, 1919, plaintiffs dealt with said Zook & Zook Live Stock Commission Co. in making the said sale, and received and accepted the check of said Zook & Zook Live Stock Commission Co. for the purchase price thereof, on said date, drawn on the Drovers National Bank of Kansas City, Mo., which was situated directly across the street from the Live Stock Exchange Building, wherein plaintiffs' business office was located, and plaintiffs failed and neglected to present said check to the said drawee bank for payment within a reasonable time, and did not present same for payment until the afternoon of March 7, 1919; and that if said check had been presented for payment on March 5 or 6, 1919, or the forenoon of March 7th, it would have been paid in full out of the funds of Zook & Zook Live Stock Commission Co., then on deposit in said bank, and that such failure of plaintiffs to receive payment of said check was due wholly to their own fault and

negligence in not presenting same for payment within a reasonable time.

The reply was a general denial. A jury was waived and the cause was tried to the court, resulting in a judgment for plaintiff in the sum of $5167.05, with interest from March 6, 1919, $2218.24, total $7385.29.

Findings of fact and conclusions of law were asked by both sides. Motions for a new trial and in arrest of judgment were ineffectual and defendant has appealed.

Briefly stated, the question sought to be determined herein is whether plaintiffs or defendant shall lose the price of the cattle in question by reason of the failure of Zook & Zook Live Stock Commission Co.

In support of the appeal, the first charge under points and authorities is general, that the judgment of the court is against the law and the evidence, and is not supported by any substantial evidence. The judgment is based upon the findings of facts and conclusions of law by the trial court.

It is the law, and of this there is no dispute, that the findings of facts by the trial court, sitting as a jury, as here, are tantamount to a verdict by a jury, with which this court will not interfere. If however, on appeal, the conclusions of law by the trial court are erroneous, it is within our jurisdiction to reverse the judgment.

Defendant, in his brief and argument, admits that there was no formal, express agreement, oral or written, governing the manner of payment. Therefore, the court's finding of fact "B," as follows, was not error:

"The court finds the fact to be that at the time of the purchase of said cattle there was no agreement made that Zook & Zook as agent for the defendant should be held liable for the purchase price of said cattle."

Thus correctly finding the fact, the application of the law to such fact, would seem to be simple enough.

The general rule applicable to this situation is laid down in 21 R. C. L., sec. 26, relating to Principle and Agent, thus:

"If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone, unless credit was given expressly and exclusively to the agent, and it appears that it was clearly his intention to assume the obligation as a personal liability and he was informed that credit was extended to him alone. The presumption is, where one known to be an agent deals or contracts within the scope of his authority, that credit is extended to the principal alone and that the act or contract is his engagement as if he were personally present and acting or contracting. And this presumption prevails, in the absence of evidence that credit was given to the agent exclusively, the burden of

proof being upon the party seeking to charge such agent exclusively. The question whether credit was given to the agent alone is one of fact to be determined by the jury from a consideration of all the facts and circumstances attending the transaction.'' To the same effect is 30 Cyc. 1207.

This general rule has been declared to be the law in this State (Biscuit Co. v. Grocer Co., 143 Mo. App. 306): ''The rule is well established that in the absence of an agreement between the parties that it is to be received as payment, the common law which prevails in England and has been adopted without question in nearly all of the states in this country is that a draft or bill of exchange, acceptance, order or promissory note of the debtor is not a payment or an extinguishment of the original demand. And the same rule applies to the bill, note, order or acceptance of a third person given by the debtor to the creditor. [30 Cyc. 1194.] And Missouri is one of the States that has accepted the common-law rule that the taking of a check, bill of exchange or note for a debt is not payment of the debt unless the creditor expressly agrees to take it as such; it is not payment until the money is received on it. [Selby v. McCullough, 26 Mo. App. 72, and cases cited; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 570, 22 S. W. 813; Smith v. Bank, 120 Mo. App. 550, 197 S. W. 247; Barton v. Hunter, 59 Mo. App. 618; Carroll Exchange Bank v. First National Bank, 58 Mo. App. 17.]'' [See, also, Ballard v. Bank, 195 S. W. 561; Pile v. Bank, 173 S. W. 51; Armstrong v. Bank, 195 S. W. 562.]

The law is well settled in this State that when a sale is made for cash, the transaction is not complete until the purchase price is paid, and until then, no title passes to the purchaser, unless the seller waives payment. In the case of Commission Company v. Railroad Co., 72 Mo. App. 437, the court goes still further and holds: ''Where a sale is made for cash on delivery and though the delivery is made, the vendee fails to pay the purchase price, the title remains in the seller; and a purchaser with notice fails to acquire title from such vendee.''

There is substantial evidence of record that Zook & Zook were defendant's agent in the purchase of the cattle in question. Mahoney was positive in stating that he contracted with defendant for the sale of the cattle; that Zook & Zook were merely defendant's agent, and only employed to select the cattle purchased. In fact, defendant stated that he directed Zook & Zook's salesman to bid ten cents more per hundredweight for the cattle. It cannot, therefore, be successfully contended that there was not substantial testimony that the same was not made by plaintiffs' agent, Mahoney, direct to defendant.

Defendant urges that the court's conclusion of law ''A'' was error. The conclusion is as follows: ''The court declares the law to be that if Zook & Zook Live Stock Commission Company were the agent of the defendant for the purchase of the cattle in question, that the

giving of defendant's agent by defendant of a check to cover the purchase price of said cattle does not relieve the defendant from paying for said cattle in case its agent, Zook & Zook Live Stock Commission Company failed so to do.''

Under the above citations and the evidence, such conclusion cannot be condemned as error. It is neither against the evidence nor the law. The evidence in support of it is substantial, and being so, we may not disturb it.

It is urged plaintiffs are estopped from asserting a claim against defendant. What we have already said, determines this question against defendant's contention, and we need not discuss it further.

A correct application of the principles of law, cited supra, precludes us from declaring the trial court erred in its finding of fact and conclusions of law, and we so rule.

Defendant suggests that this court will set aside findings when they are not based upon substantial evidence. There is no dispute about this rule, but we find in the case at bar no reason for its application in defendant's favor.

It is charged the court erred in refusing findings of fact 1, 2, 3, 7 and 8 requested by defendant.

We have examined the last-named requested findings of fact, and find defendant's position relative thereto untenable. They are in fact requests for a finding tantamount to peremptory instructions in defendant's favor. In the light of what we have already said, we cannot hold the trial court in error in refusing them.

The only remaining point for determination is defendant's contention that the check given by Zook & Zook Live Stock Commission Co. was not presented for payment within a reasonable time. The trial court held that said check was presented in due course of business, and, therefore, within a reasonable time.

The testimony shows the check was received on March 6, after ten o'clock in the morning, and deposited that afternoon at four; that it went through the bank clearing house the following day. The cashier of the drawee bank, the Drovers National, testified the check was presented to his bank through the Kansas City Clearing House on March 7th; that the clearing at the clearing house was at 11:30 A. M., and that the check reached his bank at about twelve o'clock noon on March 7th. This witness testified that in the usual course of business a check by Zook & Zook Live Stock Commission Company would pass through the clearing house; that ordinarily a firm would not take a check drawn on another bank than the one with which it did business and present it direct to the bank on which it was drawn, but would pass it through the clearing house. The general rule as to reasonable time is stated in 5 R. C. L. 509, par. 32, thus:

''What is Reasonable Time?—It is an almost universal rule, that if the bank upon which the check is drawn and the holder are in the

same place, the check must, in the absence of special circumstances, be presented for payment within the banking hours of the day it is received, or on the day after it is received.''

In this State, the Supreme Court in Wear v. Lee, 87 Mo. 358, BLACK, J., speaking for the court, said:

"Where the payee to whom the check is delivered by the drawer receives it in the same place where the bank on which it is drawn is located he may preserve recourse against the drawer by presenting it for payment at any time before the close of banking hours on the next day, and if, in the meantime, the bank fails, the loss will be the drawer's. [Dan. on Neg. Inst., secs. 1590, 1591; 2 Parsons on Notes and Bills, 73; Story on Bills, sec. 471.]" [See, also, Bank v. Korn, 179 S. W. 721; Brunswick v. Bank, 194 Mo. App. 362.]

The testimony shows plaintiffs deposited the check in question in their depository bank on the date of its receipt by them and it reached the bank on which it was drawn the following day. This evidence is not contradicted. We hold in this respect the trial court was not in error in holding plaintiffs presented the check for payment within a reasonable time.

We have read defendant's excellent brief and have considered the citations therein, but find nothing contrary to the conclusions above expressed. There is no reversible error of record; and the judgment is hereby affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.