THE JOHNSON-BRINKMAN COMMISSION COMPANY,
*Appellant*, v. THE MISSOURI PACIFIC
RAILWAY COMPANY.

### Division Two, January 9, 1895.

1. **Attachment**: REPLEVIN: ELECTION OF REMEDIES. The fact that a vendor of personal property brings an attachment suit against the vendee, which he afterwards dismisses on the advice of his attorneys, does not estop him from bringing replevin to recover the goods sold, in the absence of intervening rights or injury or change of position by reason of the attachment.

2. ——: ——: ——. Nor will the vendor be estopped, in such case, from bringing replevin although there was no misconception as to his remedy in bringing the attachment.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow & Fox* for appellant.

(1) The court erred in ruling as a matter of law, that the mere act of bringing an attachment suit was a conclusive election between inconsistent remedies and was a complete bar to this action. *Anchor Milling Co. v. Walsh*, 20 Mo. App. 107; *Lapp v. Ryan*, 23 Mo. App. 436; *Foundry Co. v. Hersee*, 33 Hun, 176; *Butler v. Hildreth*, 5 Met. 49; *Mining Co. v. Mining Co.*, 7 Fed. Rep. 424; *Bunch v. Grave*, 12 N. E. Rep. 517; Bigelow on Estoppel [2 Ed.], p. 503; *Dillon v. Parker*, 1 Swan's Chancery, 359; *Spread v. Morgan*, 11 H. of L. Cas. 588; *Bank v. Beale*, 34 N. Y. 473; *Kennedy v. Thorpe*, 51 N. Y. 176; *Rodermund v. Clark*, 46 N. Y. 354; *Smith v. Gray*, 14 Gray, 532; Herman on Estoppel and Res Adjudicata, secs. 1028, 1030, 1038. (2) The

case of *Johnson-Brinkman Commission Co. v. Central Bank*, 116 Mo. 558, is decisive of this case.

*Elijah Robinson* and *Jos. S. Laurie* for respondent.

(1) Plaintiff had the option to ratify or rescind the sale in question; and having elected to ratify, plaintiff is precluded from maintaining a subsequent action based upon a rescission of such sale. Benjamin on Sales [6 Ed.], secs. 33, 442; *Pence v. Langdon*, 99 U. S. 578; *Crossman v. Rubber Co.*, 127 N. Y. 34; *Crook v. Bank*, 52 N. W. Rep. 1131; *O'Donald v. Constant*, 82 Ind. 212; *Connihan v. Thompson*, 111 Mass. 270; *Lehman, Durr & Co. v. Van Winkle & Co.*, 92 Ala. 443; *Terry v. Munger*, 121 N. Y. 161; *Conrow v. Little*, 115 N. Y. 387; *Bach v. Tuch*, 126 N. Y. 54; *Thompson v. Fuller*, 16 N. Y. S. 486; *Fowler v. Savings Bank*, 113 N. Y. 450; *Foundry Co. v. Hersee*, 103 N. Y. 25; *Moller v. Luska*, 87 N. Y. 166; *Nield v. Burton*, 49 Mich. 53; *Thompson v. Howard*, 31 Mich. 304; *Arnold v. Hagerman*, 45 N. J. Eq. 186; *Carter v. Smith*, 23 Wis. 497; *Wheeler v. Dunn*, 13 Col. 428; *McLean v. Clapp*, 141 U. S. 429; *Nanson v. Jacob*, 93 Mo. 331; *Taylor v. Short*, 107 Mo. 384; Bigelow on Estoppel [5 Ed.], pp. 673-679; Herman on Estoppel and Res Judicata, secs. 1039, 1043-5, 1051-2. (2) The verdict is for the right party and the judgment should therefore be affirmed. "Where upon the whole record the judgment is manifestly for the right party, it will not be reversed, though some errors may have intervened." *Phillips v. Batchelder*, 47 Mo. App. 52.

BURGESS, J.—This is an action of replevin for three car loads of wheat. On a trial before a jury, in the circuit court of Jackson county, there was a demurrer interposed by defendant to the evidence which was

sustained, final judgment rendered for defendant, against plaintiff, for the value of the wheat at the time of the trial which was fixed at $1,237.34 and $92.80 for damages for its wrongful taking and detention. From the judgment plaintiff appealed to the Kansas City court of appeals, where the judgment was affirmed but that court certified the cause to this court because of the opinion of that court being in conflict with the opinion of the St. Louis court of appeals in *Anchor Milling Co v. Walsh*, 20 Mo. App. 107, and *Lapp v. Ryan*, 23 Mo. App. 436.

On September 1, 1890, the Imboden Commission Company was a corporation engaged in the grain business at Kansas City, Missouri. In the latter part of August of that year the plaintiff sold and delivered to the Imboden Company a number of cars of wheat, among which were included the three cars here in controversy, which were then in the freight yard of the defendant company at that city. The sale was for cash on delivery. According to the custom which prevailed among grain dealers in Kansas City, the plaintiff furnished to the Imboden Company elevator receipts, certificates of weight, inspection certificate as to grade, invoices and bills of lading, the bill of lading being issued by the defendant company. Immediately upon the receipt of said bill of lading, Imboden surrendered it to the defendant company and obtained from said defendant company in lieu thereof another bill of lading for said wheat whereby the wheat was to be delivered upon the order of the Imboden Company to C. H. Albers & Company at St. Louis.

As soon as Imboden received the bill of lading, he took it to the Central Bank in Kansas City, and indorsed and delivered it to said bank with a draft thereto attached upon Albers & Company for $1,383.62, which was signed by the Imboden Company, and made

payable to said bank. During the afternoon of the same day the Imboden Commission Company sent its check drawn on the Central Bank for $1,374.82, the contract price for the wheat to the Johnson-Brinkman Commission Company. The Imboden Company kept its account with the Central Bank, and on September 1, its account was overdrawn several thousand dollars.

In the afternoon of September 1, plaintiff, becoming apprehensive that the check it had received from the Imboden Commission Company was likely to be dishonored, Johnson, in company with Imboden, went to the Central Bank, presented the check and demanded its payment or a surrender of the Albers draft and bill of lading, but the bank declined to do either one. Johnson and Imboden then went to the latter's office, and at Johnson's request, Imboden turned over to him for the Johnson–Brinkman Commission Company, all its office furniture to protect it on account of the sale of its wheat, Johnson taking possession of the office and putting a notice on the door. They then went to the telegraph office, and, at Johnson's request, Imboden telegraphed Albers & Company to pay no more drafts. Johnson also immediately thereafter notified the superintendent of defendant's freight yard at Kansas City to hold the wheat until further orders from the Johnson–Brinkman Commission Company.

During the same evening Johnson went to the office of his attorneys, and, after a short conference with them, sued out an attachment in the name of the Johnson–Brinkman Commission Company as plaintiff and against the Imboden Commission Company as defendant. The petition alleged the sale and delivery of the wheat, and the affidavit for attachment averred that the sale was for cash on delivery, and that the Imboden Commission Company had failed to pay for the same.

A writ of attachment was then issued by the proper officer, and the wheat seized by the sheriff.

On September 9, 1890, plaintiff dismissed the attachment suit, and afterwards, on the same day, began the present action to recover possession of said wheat, and the same was delivered to it in pursuance of an order of delivery issued herein.

On September 1, the Central Bank sent the bill of lading and draft upon Albers & Company to its correspondent in St. Louis for collection. On the following day it was presented for payment; but Albers, having in the meantime been notified by Imboden to pay no more drafts, declined to pay it at that time, but subsequently paid it at the request of the Central Bank. This was after the cashier of the Central Bank had gone to St. Louis and assured Albers that Imboden had no interest in the wheat; that the bank was the owner thereof, and that he, Albers, should receive the wheat if paid for. It was after this assurance, and relying thereupon, that Albers, without any knowledge, as claimed by him, of the claim of Johnson–Brinkman Commission Company, paid the draft.

Plaintiff's first contention is that the court erred in ruling, as a matter of law, that the mere act of plaintiff in bringing an attachment suit against the Imboden Commission Company and attaching the wheat as its property, and subsequently dismissing it before final judgment, and the commencement of this action, was a conclusive election between inconsistent remedies and a complete bar to this action.

Upon this question there is a direct conflict in the opinion rendered in the case by the Kansas City court of appeals, 52 Mo. App. 407, and the decisions of the St. Louis court of appeals, in *Anchor Milling Co. v. Walsh*, 20 Mo. App. 107, and *Lapp v. Ryan*, 23 Mo. App. 436. It was held by the Kansas City court of

appeals in this case, that, as the plaintiff had an election between inconsistent remedies, as where one action is founded on an affirmance of a voidable sale or contract, any decisive act of affirmance or disaffirmance, if done with knowledge of the facts, determines the legal rights of the parties once for all; and that the institution of the attachment suit by plaintiff against the Imboden Commission Company was such a decisive act, and a bar to this suit, while in the *Anchor Milling Company* case it was held that the levy of an attachment upon chattels as the defendant's property does not prevent the plaintiff from subsequently seizing the same property in replevin as his own. This case was followed and approved by the same court in the *Lapp case.* Both of the cases last named were followed and approved by this court in *Johnson-Brinkman Company v. Central Bank,* 116 Mo. 558.

But it is insisted by counsel for defendant that the three cases last named are not in accord with the great weight of authority, which is, as he claims, as announced in this case, 52 Mo. App., *supra,* and should be modified or overruled. It is well settled law that where a party has the right to pursue one of two inconsistent remedies, and he makes his election, and institutes his suit, in case the action thus begun is prosecuted to final judgment, or the plaintiff has received anything of value under a claim thus asserted, he can not thereafter pursue another and inconsistent remedy. *Nanson v. Jacob,* 93 Mo. 331; *Estes v. Reynolds,* 75 Mo. 563; *Stoller v. Coates,* 88 Mo. 514; *Bradley v. Brigham,* 149 Mass. 141; *Farwell v. Myers,* 59 Mich. 179; *Ewing v. Cook,* 85 Tenn. 332; *Bank v. Beale,* 34 N. Y. 473; *Fields v. Bland,* 81 N. Y. 239; *Boots v. Ferguson,* 46 Hun, 129; *Carter v. Smith,* 23 Wis. 497; *Wheeler v. Dunn,* 13 Colo. 428; *Thomas v. Joslin,* 36 Minn. 1; *Fowler v. Bank,* 113 N. Y. 450.

350 SUPREME COURT OF MISSOURI,

Johnson-Brinkman Com. Co. v. Mo. Pac. R'y Co.

There is also another class of decisions which hold that a creditor having simply elected to pursue one of two inconsistent remedies is bound thereby, and that he can not subsequently abandon the one first chosen and pursue the other. Thus it is held in *O'Donald v. Constant*, 82 Ind. 212, that: "While a creditor of whom the debtor had bought goods, not intending to pay for them, but to use them in preferring other creditors, may doubtless disaffirm the sale, and recover his goods, unless resold to an innocent purchaser, yet, by bringing an attachment suit against his debtor, he affirms the sale and takes the place of an ordinary creditor." See also *Lehman v. Van Winkle*, 92 Ala. 443; *Morris v. Rexford*, 18 N. Y. 552; *Moller v. Tuska*, 87 N. Y. 166; *Nield v. Burton*, 49 Mich. 53; *Bauman v. Jaffray*, 6 Tex. Civ. App. 489; *Crompton v. Beach*, 62 Conn. 25.

The authorities, however, upon this proposition are not quite uniform. Thus in *Equitable Foundry Co. v. Hersee*, 33 Hun, 169, it was held that when the plaintiff had instituted a suit in affirmance of the contract but had dismissed the same, before judgment, and before having derived any benefit therefrom, and which had inflicted no injury upon the defendant, such action did not constitute an absolute election of inconsistent remedies whereby plaintiff was afterwards precluded from prosecuting a new suit upon another and inconsistent remedy.

So in *Johnson v. Frew*, 33 Hun, 193, plaintiff sued defendant to recover possession of a harness which one Galitz fraudulently induced the plaintiff to sell and deliver to him on credit. Plaintiff afterwards took the harness from defendant's possession and carried it away, but before doing so he procured an attachment from a justice of the peace upon an affidavit alleging, among other things, that Galitz was indebted to him for the unpaid portion of the purchase price of the harness, which

attachment Quaint, the constable, had with him when the harness was taken from the depot where defendant had left it. SMITH, P. J., in speaking for the court said: "It is contended by the appellant's counsel that the plaintiff, by his attachment proceeding, elected to affirm the contract. That would be the case if the attachment was issued in an action which had been prosecuted to judgment or was pending at the time of the trial. But of that there is no proof. * * * It was not, therefore, conclusive against the plaintiff as matter of law. At most, the plaintiff's affidavit and his proceedings under the attachment, even if he be assumed to take the harness by virtue of it, raised a question of fact as to whether he affirmed the contract."

In an action to recover damages for the fraud of defendant in obtaining certain goods from the plaintiffs under a contract induced by the false and fraudulent representations of the defendant, a writ of attachment was issued and levied upon a portion of the goods alleged to have been so obtained together with other goods of the defendant; and it was held that such levy, and a sale thereunder, did not necessarily constitute a waiver of the fraud and an affirmance of the contract by the plaintiff. *Dean v. Yates*, 22 Ohio St. 388. See, also, *Peters v. Ballistier*, 3 Pick. 495.

But the authorities which hold that, when an election of remedies has been made which are inconsistent, in order to amount to an estoppel it must be made with full knowledge of all the facts in the case. *Black v. Miller*, 75 Mich. 323; *Bulkley v. Morgan*, 46 Conn. 393; *Connihan v. Thompson*, 111 Mass. 270; *Terry v. Munger*, 121 N. Y. 161; *Conrow v. Little*, 115 N. Y. 387; *Equitable Foundry Co. v. Hersee*, 103 N. Y. 25; *Thompson v. Howard*, 31 Mich. 309; *O'Bryan Bros. v. Glenn Bros.*, 91 Tenn. 106. It has also been said that "the mere fact that a party mistakes his remedy,

believing he has two or more remedies when he has not and pursues the wrong one, will not of itself prevent him from subsequently obtaining redress by the proper remedy.'' 1 Elliott's General Practice, sec. 276. In *Snow v. Alley*, 156 Mass. 193, it is said: ''Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice. *Metcalf v. Williams*, 144 Mass. 452, 454. But the fact that a party wrongly supposes that he has two such rights, and attempts to choose the one to which he is not entitled, is not enough to prevent his exercising the other, if he is entitled to that. There would be no sense or principle in such a rule.''

The question then arises how was it, or by whom was it, to be determined that the plaintiff herein mistook his remedy in bringing the attachment suit? It will not be contended, we presume, that after it had been instituted, and although plaintiff's attorney had become fully satisfied that the action had been improvidently brought, yet that it was necessary in order to save to his client the right to sue in replevin, that he should at his expense prosecute the case to final judgment, in order to settle that question. Nor do we for one moment suppose that that issue could be tried in this controversy. It necessarily follows that plaintiff must have determined for himself upon the advice of his attorney, just as he did do, whether he would proceed with the attachment suit to final judgment or not, and having determined to dismiss it, that he was not, by reason of having instituted it, estopped from bringing this action. We are aware that it was otherwise held in *O'Bryan Bros. v. Glenn Bros.*, 91 Tenn. 106, but that case seems to be so inconsistent with reason and justice that we must decline to give it our approval.

The authorities which hold that a person having two inconsistent remedies and electing to pursue one can not thereafter pursue the other, do so upon the ground of election, or, as most courts put it, estoppel. As was said in *Anchor Milling Co. v. Walsh*, 20 Mo. App. 106, *supra:* "There is no element of estoppel in the case. There is no estoppel by record, for the attachment suit has not proceeded to judgment. There is no estoppel *in pais*, for the defendant has not taken such action in consequence of the suing out of the attachment that he will receive detriment in a legal sense from the conduct of the plaintiff in changing his position and pursuing a different remedy."

There were no intervening rights in this case from the time of suing out the attachment, until that suit was dismissed, nor is it claimed that the defendant therein was by reason thereof induced to change his position with respect of the wheat in controversy. "Estoppel *in pais* may be defined to be a right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged." Bigelow on Estoppel [4 Ed.], 445.

The attachment suit was brought hastily and without time, as appears from the record, for the attorneys who brought it to investigate the facts in the case, who after having done so came to the conclusion that it was improvidently brought, and dismissed it; and to hold, under such circumstances, that plaintiff is estopped by his election in that case from prosecuting this, in the absence of intervening rights, injury, or change of position by anybody, by reason thereof, would be, we think, invoking a harsh and very unjust rule.

But, aside from any misconception as to the institution of the attachment suit, as it was dismissed

before judgment, before the rights of others had intervened, and as the defendant therein, was in no way injured in consequence thereof, we are not inclined to hold that plaintiff is, by reason of the institution of that suit, estopped from prosecuting this. *Anchor Milling Co. v. Walsh, supra; Lapp v. Ryan, supra; Johnson–Brinkman Co. v. Central Bank, supra.*

It is insisted by counsel for defendant that the judgment was for the right party and should for that reason be affirmed. While it may be conceded that plaintiff's right to rescind the sale of the wheat was subject to any rights that may have accrued in favor of third parties, during the interval between the sale and the time that it was replevied, yet as to whether Albers & Company, in good faith, and without notice, paid the draft drawn on them by the Imboden Commission Company, which was attached to the bill of lading accompanying the wheat, was a question to be passed upon by the jury, under the evidence, and there was some evidence which tended to show that they paid the draft with notice of plaintiff's claim to the wheat, and upon the assurance of the Central Bank that if they paid the draft they should have the wheat.

The judgment of the court of appeals is reversed with directions to reverse the judgment of the circuit court, and to remand the cause, to be tried in conformity with the views herein expressed. All of this division concur.