JOHNSON-BRINKMAN COMMISSION COMPANY, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, December 6, 1897.

1. **Sales:** OASH ON DELIVERY: TITLE: PURCHASER. Where a sale is made for cash on delivery, and though the delivery is made, the vendee fails to pay the purchase price, the title remains in the seller; and a purchaser with notice fails to acquire title from such vendee.

2. **Bills and Notes:** COUNTERMANDED DRAFT: INNOCENT HOLDER. The drawer of a draft has the right to countermand the same before being presented or accepted or paid by the drawee, and a drawee paying after such countermand can not become an innocent holder; he is a mere volunteer.

3. ———: ———: ASSIGNMENT OF FUND. A countermanded draft becomes a mere nullity and can not operate as the assignment of a fund in the hands of a debtor.

4. ———: RETURN OF WORTHLESS CHECK: ELECTION OF REMEDIES. In this case the question of the return of a worthless check for the purchase price of certain wheat is held of no consequence, as is also the question of election of remedies.

*Appeal from the Jackson Circuit Court.*—HON. JNO. W. HENRY, Judge.

AFFIRMED.

*Elijah Robinson* and *Jos. S. Laurie* for appellant.

(1) The instructions given by the trial court in behalf of the plaintiff are erroneous. Said instructions undertook to cover the whole case, and should therefore embody all the facts essential to plaintiff's recovery, and should not, by ignoring the same, exclude from the consideration of the jury points raised by the evidence of defendant. The above rule is well settled. *Cultivator Co. v. R'y*, 64 Mo. App. 305; *Machine Co. v. Bobbst*, 56 Mo. App. 427; *Hohstadt v. Daggs*,

50 Mo. App. 240. "A draft or order drawn upon a debtor for the amount of the debt operates as an equitable assignment of the debt," and further, that "it has long been settled by the courts in this state, as well as by most other judicial tribunals, that after such assignment of a chose in action the assignor shall not be allowed to defeat the rights of the assignee, whether the assignment be made at law or only in equity." *Blin v. Pierce*, 20 Vt. 25; *Press Brick Co. v. Saville*, 1 Mo. App. 96; *Hallon v. Randall*, 48 Mo. App. 202, 207; *Walker v. Mauro*, 18 Mo. 564; *Conway v. Cutting*, 51 N. H. 407; *McWilliams v. Webb*, 32 Iowa, 578; *Bank v. Sprallen*, 43 Pac. Rep. (Col.) 1048; *Gardner v. Bank*, 39 Ohio St. 600; *Moore v. Davis*, 67 Mich. 251; *Wheatly v. Strobe*, 12 Cal. 92; *Nimocks v. Woody*, 97 N. C. 1; *Christmas v. Russell*, 14 Wall. 69, 84. (2) Plaintiff waived its right to rescind the contract of sale. "The right to disaffirm a contract for fraud must be exercised promptly." *Estes v. Reynolds*, 75 Mo. 563; *Hart v. Handlin*, 43 Mo. 171; *Robinson v. Siple*, 129 Mo. 208; *Kirk v. Seeley*, 63 Mo. App. 262, 266; *Dry Goods Co. v. Jacobs*, 66 Mo. App. 362. (4) Albers & Company were innocent purchasers. *Craig v. Zimmerman*, 87 Mo. 475, and cases cited. *Bank v. Pitkin*, 66 Mo. App. 592; *Jennings v. Todd*, 118 Mo. 296; *Mayes v. Robinson*, 93 Mo. 114, 122; *Johnson v. McMurray*, 72 Mo. 278; *Edwards v. Thomas*, 66 Mo. 468; *Hamilton v. Marks*, 63 Mo. 167; Her. on Estop., secs. 995, 1005, 938, 939, 757–760; *Rice v. Bunce*, 49 Mo. 231; *Schenck v. Sautter*, 73 Mo. 46.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) Under the conceded facts in the case, the plaintiff was entitled to a peremptory instruction to find a verdict for the plaintiff. *Commission Co. v.*

*Bank*, 116 Mo. 588; *Allen v. Logan*, 96 Mo. 591. In addition to this, when it is once stated that the sale was cash on delivery and that no cash was paid, it follows inevitably that the legal title never has passed out of the plaintiff. *Commission Co. v. Bank*, 116 Mo. 558, *loc. cit.* 569, 570; *R. R. v. Irwin*, 9 Am. and Eng. R'y Cases, 252; *Bank v. R. R.*, 46 N. W. Rep. (Minn.) 342; *Freight Co. v. Stanard*, 44 Mo. 71; *State v. Brewing Co.*, 32 Mo. App. 276. (2) The draft having been countermanded by the Imboden Commission Company, no one thereafter, with knowledge of such countermand, could acquire any rights by undertaking to pay it. *Albers v. Bank*, 85 Mo. 176; *Bank v. Bank*, 30 Mo. App. 277; *Wienholt v. Spitta*, 3 Camp. 376.

GILL, J.—This is a suit in replevin for three cars of wheat and is of several years' standing. It was begun in September, 1890, resulting in a judgment in the circuit court in defendant's favor; thence appealed to this court, where the judgment of the circuit court was affirmed (52 Mo. App. 407); then transferred to the supreme court because of a supposed conflict of decision between this court and the St. Louis court of appeals; the supreme court heard the case (126 Mo. 344) and reversed the judgment of the circuit court, where another trial was had with a judgment for plaintiff, and defendant has prosecuted this last appeal.

While a general understanding of the controversy may be had by consulting these former reported decisions, we deem it necessary to state here the principal facts as we find them fairly set out in the brief of plaintiff's council:

On September 1, 1890, the Johnson-Brinkman Commission Company, the plaintiff, at that time do-

STATEMENT.

ing business as a grain commission merchant in Kansas City, sold for cash on delivery to the Imboden Commission Company, a concern engaged in the same business in Kansas City, three cars of wheat. These three cars were a part of a sale of nine cars, six of which were delivered on the last day of August. At the time of the sale, and in order to make delivery of the wheat to the Imboden Commission Company the plaintiff indorsed and delivered to the Imboden company the bill of lading issued by the Missouri Pacific Railway Company, in which the grain was billed to the order of Johnson-Brinkman Company, and the Imboden company at once delivered to the plaintiff its check on the Central Bank of Kansas City in the sum of $1,374.82, being the amount of the invoice of said three cars.

The Imboden company, on receipt of the title papers, surrendered to the Missouri Pacific Railway Company the bill of lading it had received from the plaintiff, and obtained in lieu thereof a bill of lading whereby the three cars were consigned to the order of Imboden Commission Company, notify C. H. Albers, St. Louis. The Imboden company then drew a draft upon C. H. Albers, of St. Louis, and attached the bill of lading, duly indorsed, to the draft, and deposited the draft with the Central Bank, to be forwarded to St. Louis and there collected from C. H. Albers. In the afternoon of September 1, the plaintiff became advised that a check, given by the Imboden Commission Company on the preceding day, had been thrown out by the Central Bank, and the plaintiff's president, in company with Imboden, immediately went to the Central Bank and there demanded of its officers either the payment of the check for $1,374.82, which was then presented, or the return to it of the three cars of wheat, on the ground that it was a cash sale and cash had

not been paid. The Central Bank refused to either honor the check or surrender the grain. Thereupon the Imboden company, immediately, at the suggestion of the plaintiff, sent a telegram to Albers, of St. Louis, as follows: "Refuse all unpaid drafts. Wire draft last paid." This message was promptly received by Albers at St. Louis. The Imboden company thereupon, recognizing that the grain had not been paid for and that it still remained the property of the plaintiff, and that litigation would be likely to ensue, turned over to the plaintiff its office furniture, valued at about $75, for the sole purpose of indemnifying the plaintiff against the expenses of litigation in regaining possession of its (plaintiff's) grain.

The Central Bank forwarded the draft, with bill of lading attached, to the National Bank of the Republic, at St. Louis, for collection against Albers, and the draft was duly presented to Mr. Albers on the morning of September 2. Mr. Albers refused to pay the draft, on the ground that he had received a telegram from the Imboden company, the drawer of the draft, directing that it be not paid. The Central Bank was notified of Mr. Albers' refusal to pay the draft, and on the morning of the third of September, Mr. Thayer, the cashier of the Central Bank, arrived in St. Louis and at once saw Mr. Albers, who again declined to pay the draft, on the same ground. Mr. Thayer then had some negotiations with Mr. Albers which resulted in Mr. Thayer guaranteeing in behalf of his bank that Albers would receive the grain on the bill of lading. Upon the strength of this guaranty Albers paid the draft on the third of September.

The Missouri Pacific Railway Company had been served with a notice of garnishment in respect to these three cars; so that on September 9, the date of the institution of this suit, the cars were still in the yards of

the Missouri Pacific, and were taken by the plaintiff under the writ of replevin.

The Imboden Commission Company had been doing a commission business in Kansas City for some time, and not being provided with a working capital, had made a special arrangement with the Central Bank for the purpose of enabling it to handle its orders. By the terms of that arrangement the Imboden Commission Company were authorized by the bank to draw checks upon the bank to pay for grain to fill the commission company's orders. To meet this check when it should be presented, the commission company was required to draw at once upon its customer for the purchase price of the grain and deposit the draft, with bill of lading attached, in the bank. This draft was accepted by the bank as cash for the purpose of paying the check given by the Imboden company for the purchase price of the grain. For the purpose of identifying the check to which the proceeds of any one draft was to be applied, the check ordinarily (and in this instance) had, written upon its back, the car numbers shown in the bill of lading attached to said draft.

The fact of this agreement appeared without contradiction and is one of the conceded facts in the case.

It will be seen that this is a controversy as to whether the plaintiff, the Johnson-Brinkman Company, of Kansas City, or C. H. Albers, of St. Louis, was the legal owner of the three cars of wheat, which, at the beginning of the action, was held by the Missouri Pacific Railway Company on its side tracks at Kansas City. Unquestionably, plaintiff was, on September 1, 1890, the owner and in the possession of the grain; the question is whether under the facts in the case this ownership was lost and passed into Albers. The latter claims the

SALES: cash on delivery: title: purchaser.

property because he says that he bought it at St. Louis on September 3, 1890, in that on that day he paid the draft of one Imboden, who had theretofore consigned the wheat to him (Albers) from Kansas City, and that along with Imboden's draft for the purchase price he, Albers, got the bill of lading which had been issued to Imboden, assigned in blank and attached to the draft. Plaintiff's claim to the property is based on the admitted fact that while on September 1, 1890, it agreed to sell the wheat, then in its possession, to Imboden, such sale was for cash on delivery; that though delivery was made to Imboden, he failed to pay the purchase price, and hence plaintiff insists that the title to the grain did not pass.

There can be no question, under the conceded facts of this case, that plaintiff had the legal right to re-take the property from either Imboden or from the Central Bank. A failure to pay the purchase price on delivery, as agreed, rendered the sale nugatory on the election of the vendor. The purchase price was not so paid; Imboden conceded plaintiff's right to resume possession of the property, and at once went with the latter to the Central Bank and demanded a return of the property to the plaintiff. The Central Bank was all the time fully acquainted with the facts attending the sale, knew when it took the bill of lading and accompanying draft that the wheat was purchased for cash on delivery, and that no cash had been paid. The bank was not then an innocent holder for value, and occupied no better attitude for claiming the wheat than did Imboden. On the same evidence this was the holding of the supreme court in a companion case. *Johnson-Brinkman Co. v. Central Bank*, 116 Mo. *loc. cit.* 573, 574.

The decisive question is, whether Albers shall be regarded as a purchaser in good faith by reason of his

payment of Imboden's draft on the third day of September. As to this the trial court instructed the jury, "that the telegram from the Imboden Commission Company to Albers, directing him to pay no more drafts, was a countermanding of the payment of the draft in controversy, and Albers could not acquire any rights to the property in controversy by paying said draft after such countermand by undertaking to pay said draft, and said Albers did not thereby become an innocent purchaser for value of the draft or bill of lading or wheat in controversy."

*BILLS and notes: countermanded draft: innocent holder.*

In our opinion this was a correct declaration of law. It seems, however, that the court might very properly have given a peremptory instruction for the plaintiff, since it must be conceded that such a telegram was sent to Albers, and that it was received by him on the same day; but that in violation of such direction, Albers paid said draft and took the bill of lading. That the drawer of a check or draft has the right to countermand the same before being presented and accepted or paid by the drawee, is well settled. *Albers v. Bank*, 85 Mo. 176; *Bank v. Bank*, 58 Mo. App. 17, and authorities cited by plaintiff's counsel. And when so countermanded, such draft, as some of the judges say, becomes a mere "piece of waste paper." Since then Albers' pretended *good faith* purchase comes from his payment of the draft accompanying the consignment of the wheat, it would seem clear that, as this payment was made in the face of the revocation of the draft by the drawer and positive instructions to the drawee not to honor the same, said Albers could base no lawful right thereon. He can not in this way base a right on the commission of his wrongful act. His payment of the draft was merely voluntary and opposed

to the orders of the drawer, and he can not therefore predicate any claim thereon as against the drawer.

The foregoing, too, is a complete answer to the very learned and exhaustive argument of Albers' counsel in relation to their claim that the draft made by Imboden to the Central Bank for the entire selling price of the wheat constituted, or was evidence of, an assignment of said fund. Whatever may be the true rule as to the effect to be given a draft made by a creditor on his debtor for the full amount due by the latter—whether or not such draft may be treated as an assignment in law or equity of the claim—is of no consequence here; for in this case there was not as to the drawee Albers, any draft in existence at the time he paid the money to the Central Bank. Prior to that said draft had been canceled or revoked by the drawer. Such paper was then, as already said, a mere blank—a nullity. Nor did Albers at any time acquire any superior standing by virtue of his paying the revoked draft to the Central Bank; it was a dead letter in the hands of the latter as well as in that of the former. Neither of said parties can under the circumstances be deemed *bona fide* holders of either draft or bill of lading.

This disposes of the substantial features of the case. Other points mentioned in the brief for defendant have been examined and are found without merit. Whether or not plaintiff tendered back the worthless check it received from Imboden on the Central Bank, and which was given for the purchase price of the wheat, is of no consequence in this case. The check appears in this record attached to Imboden's deposition, and it might be well assumed that it had been returned to him. But at all events this is only a matter of which Imboden can complain. He did not do so, but promptly on the

failure of the bank to pay his vendor for the wheat, he, Imboden, consented to a rescission of the contract of sale and set about to restore to the plaintiff the grain in question.   And as to the matter of election of remedies, we have said all that we care to in that regard (52 Mo. App. 407).   Yielding now to the decision of the supreme court, we must hold that plaintiff can maintain this action, notwithstanding it first chose to affirm the sale and afterward instituted an action in attachment to recover the purchase price of the wheat (126 Mo. 344).

Judgment affirmed.   All concur.