## First National Bank v. Barse Live Stock Commission Co.

1. POSSESSION—*Wrongful Taking Does Not Divest the Owner of His Title.*—A wrongful seizure or taking of the personal property from the possession of another does not divest the lawful owner of any of his rights.

Bill of Interpleader.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed December 24, 1901.

Statement of Facts.—This was a bill of interpleader filed by Wood Brothers on June 16, 1898, asking the direction of the court in the disposition of a fund of $2,397.47 in their hands. The bill alleged that complainants were engaged in the live stock commission business at the Union Stock Yards, Chicago; that on September 3, 1896, they received 155 head of cattle from Wagoner Station, Indian Territory, that had been shipped to them by A. H. Wooters; that said cattle were sold by them as commission merchants on open market, and after deducting the expenses, commissions, etc., the sum of $2,397.47 was realized; that an itemized account of sales was promptly sent to said shipper on the 3d of September, 1896, and that they received a telegram from A. H. Wooters, dated Wagoner, Indian Territory, September 3, 1896, instructing them to remit the proceeds

to National Bank of the Republic, St. Louis, for account H. F. Moore, cashier, Crockett; that on September 5, 1896, they received a letter from A. H. Wooters confirming said telegram; that said H. F. Moore referred to in the letter and telegram was the cashier of the First National Bank of Crockett; that the First National Bank of Crockett notified complainants it was entitled to and made demand on complainants for the fund, and that the George R. Barse Live Stock Commission Co. notified complainants it was entitled to the proceeds of the sale of the cattle under an alleged chattel mortgage executed by one T. F. Smith; that on September 11, 1896, the Barse company brought an attachment suit in the Superior Court of Cook County, cause number 177,115, in which A. H. Wooters was named defendant and the complainants named as garnishees; that said attachment suit was pending until June 3, 1898, when it was dismissed and complainants discharged as garnishees; that both the bank of Crockett and Barse company were claiming the money in the hands of complainants and that complainants did not know the interest, if any, of A. H. Wooters or T. F. Smith in and to the proceeds.

Appellant and appellee and A. H. Wooters and T. F. Smith were made parties defendant to said bill of complaint. All of these defendants entered their appearance in the case, and the defendants A. H. Wooters and T. F. Smith filed disclaimers.

Appellant filed an answer and interplea, alleging that it was entitled to the fund in the hands of complainants by the terms of an agreement entered into by T. F. Smith in August, 1896, whereby Smith, being the owner of the cattle in controversy, agreed to ship the cattle in the name of A. H. Wooters, but for appellant, and thereby to assign and transfer to appellant the cattle in question for the purpose of taking up an indebtedness of said Smith to appellant which was maturing September 1, 1896; that the cattle had been shipped in accordance with said agreement for appellant; that the delivery of the cattle to Wooters was a delivery to appellant and that appellant was entitled to the fund.

200    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] First Nat. Bank v. Barse Live Stock Commission Co.

The appellee filed an answer and interplea, claiming to be entitled to the fund under the terms of a chattel mortgage executed by T. F. Smith to appellee on October 25, 1895, said Smith being a resident of Crockett, Houston county, Texas; that the cattle were located in the Creek nation in Indian Territory; that the mortgage was filed for record in Houston county, Texas, on October 28, 1895, and on October 31, 1895, was filed in the office of the clerk of the United States Court for the Northern District of Indian Territory, in accordance with the United States statutes, and that consequently appellee was entitled to the fund.

On October 22, 1898, an interlocutory decree was entered in the cause sustaining the bill of interpleader, decreeing T. F. Smith and A. H. Wooters to have no interest in the fund in controversy and ordering that the answers of appellant and appellee stand as interpleas or statements of the claims of the respective parties, and that complainants deposit the fund, then amounting to $2,334.47, with the clerk of court, and be dismissed out of the cause.

On February 15, 1900, the appellee filed an amendment to its answer and interplea by leave of court, alleging that on or about the first day of August, 1896, it had taken possession of the 155 head of cattle which were the subject of controversy in this cause, and that it was in actual and notorious possession of said cattle at the time they were shipped to Chicago in the name of A. H. Wooters.

Upon a hearing of the issues thus raised between the appellant and appellee the court found that appellee was entitled to the fund and decreed accordingly, and entered judgment against appellant for costs of suit, from which decree and judgment this appeal is prosecuted.

ALDEN, LATHAM & YOUNG and SHEPARD & SHEPARD, attorneys for appellant.

PADDOCK & BILLINGS, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court. The appellant in its brief says :

" Under. our assignment of errors we shall urge three points on this appeal, two of them being questions of law and one a question of fact.

First. The prosecution of the attachment suit against Wooters by appellee was a bar to recovery in this action.

Second. The mortgage of the Barse company was void as against the rights of appellant that accrued August 31, 1896.

Third. At the time the cattle in controversy were shipped from Gibson Station, I. T., to Chicago, they were in the possession of T. F. Smith, and not in the possession of the Barse company."

We will consider these points in the order of their making. The bill of interpleader sets out that on September 11, 1896, an attachment suit was begun in the Superior Court, wherein A. H. Wooters was made defendant and Wood Bros. were served as garnishees, for the purpose of reaching the proceeds of said cattle, and that said attachment suit was dismissed June 3, 1898.

The answers of both parties admit the commencement of said attachment suit and its dismissal, without prejudice, on the date named in the bill, and the evidence shows that the suit was dismissed on the stipulation of the parties thereto.

Immediately following the dismissal of that suit the bill of interpleader was filed by Wood Bros., making the appellant and appellee parties defendant, and the fund was paid into court. Both parties defendant submitted to the jurisdiction of the equity court in the interpleader suit, and there asserted their rights to the fund.

It is the same fund—the proceeds arising from the sale of the cattle—that is in controversy in the interpleader suit, that was sought to be reached in the attachment suit. The issues presented in the attachment suit are not shown by this record, but it is plain that they might be the same that are presented here, viz., to whom does the fund in conscience and of right belong? The appellant has not pleaded the attachment suit in bar of the right of appellee to have the fund, nor set it up in any way as a defense to appellee's claim, and without such a plea we can not say that there is any room for us to hold that appellee has in

202    APPELLATE COURTS OF ILLINOIS.

VOL. 99.] First Nat. Bank v. Barse Live Stock Commission Co.

this proceeding pursued a remedy that is inconsistent with the remedy he elected at first to pursue in the attachment suit. No intervening rights are made to appear, nor any change in appellant's position with respect of the fund, because of the attachment suit, is observable.

The case of Johnson-Brinkman Com. v. Missouri Pacific Railway Co., 126 Mo. 344, appears to be very much in point. See also Stier v. Harms, 154 Ill. 476, and Barchard v. Kohn, 157 Ill. 579.

Consideration of the second point may be deferred, for if the Barse company were in actual and open possession of the cattle at the time in question, then, whether their mortgage was good in law or not, is not material. As between the parties to it, the mortgage was good and valid, and as between the mortgagee in possession, Barse company, and a third party whose rights attached subsequent to the possession of the Barse company, it was good.

The Barse company had loaned a large amount of money to Smith, which was secured by Smith's chattel mortgage on 2,100 head of cattle that were ranging on pastures in the Indian Territory. Only 155 head of these cattle are involved in this suit, although the testimony taken in the case covers more. During the season of 1896 and prior to August first, the witness Stonebreaker was sent by the Barse company to inspect the various securities held by the company in the Indian Territory, and among others the Smith cattle. He reported a shortage of 400 to 500 head of the Smith cattle, and received instructions from the company to take such measures as were necessary to protect the interest of the company concerning what remained. Stonebreaker immediately returned to the range where the cattle were feeding. Finding there one Redman, who was then in charge of the cattle for Smith, he concluded an arrangement with him to take and hold possession of the cattle for the Barse company. This was on August first, or a day or two before the first. A great deal of testimony was taken about the possession then and thus taken, and as to what followed, for the purpose of showing and disputing

the question of the possession, and as to whether it was effectual against third persons or not.   The testimony covered a very wide range and embraced the knowledge of others concerning the fact of actual and open possession, the manner of shipments of cattle thereafter, the payment of the expenses of the ranch from that time forward, and about everything that would have a bearing upon the question.

It is reasonably plain that about the middle of August, or a little before, Smith, the mortgagor, came to the ranch, and was informed of what Stonebreaker had done in the matter of taking possession, and at first objected to it on the ground it would injure his credit, but afterward ceased to object and probably gave his assent to it, and there was considerable evidence that it soon became a matter of general notoriety in the neighborhood that the Barse company had taken possession of Smith's cattle by Stonebreaker, and that Redman was acting for Stonebreaker in the actual charge of the cattle.

But whether the evidence, considered together, sufficiently sustains appellee's contention that actual and open possession was taken on August 1, 1896, of all the cattle, or not, we need not stop to inquire, or say more than its tendency is to support the finding of the court below in that respect.   The evidence is substantially conclusive that actual possession of the 155 head of cattle involved in this suit was taken by the Barse company in the latter part of August.   These particular cattle were actually separated by agents of the Barse company, from the balance of the herd, and put into a separate inclosure known as the "horse pasture" adjoining the headquarters of the ranch, convenient to and from one-half to three-quarters of a mile from the railway station, for shipment.

After they had been thus separated, and while Redman was temporarily absent, two sons of Smith went to the "horse pasture" and drove the 155 head from there to Gibson station, some six to eight miles distant, and there shipped them to Wood Brothers in the name of A. H. Wooters; and

the cattle so shipped were the cattle directly involved in this suit.

It does not require the citation of any authorities to show that such a seizure by or in behalf of Smith or Wooters was wrongful, and did not divest the Barse company of any of its rights. Neither Wooters nor the appellant had any lien on the cattle or any of them, nor had Smith any right to their possession as against the Barse company, a mortgagee in actual and open possession of them. The only claim of Wooters or the appellant bank, to the cattle, was under a verbal agreement with Smith that he would cause to be shipped to Chicago, in the name of Wooters, but for appellant, a number of cattle, the proceeds of which would be sufficient to take up and pay a $3,000 note of his, which matured September 1, 1896, and the possession of the cattle, so wrongfully acquired.

We observe nothing else requiring discussion, and accordingly affirm the decree of the Superior Court. Decree affirmed.