# W. W. BIERCE LTD., *v.* C. J. HUTCHINS, TRUSTEE.

## PETITION FOR REHEARING.

ARGUED MAR. 13 AND APR. 18, 1905. DECIDED APR. 29, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

ELECTION—*its nature and effect.*

Election is a choice between inconsistent remedial rights. It may be manifested by the institution of an action to enforce one of the rights, whether the action is carried to completion or not and whether, if it should be carried to completion, it would be successful or not. It is of rights rather than of remedies, the attempt to enforce a particular remedy being the manifestation of the choice of one of the rights. But there cannot be an election unless there are two or more rights to elect between, and so the bringing of an action to enforce a supposed but non-existing right does not preclude the bringing of an action to enforce an inconsistent right. Likewise, even if there are two or more inconsistent rights and an action is brought to enforce one, there is no election, if such action is brought in ignorance of the facts; but if the action is brought with knowledge of the facts, there is an election, even though there is no actual intent to abandon the other inconsistent right or rights. Other actions may be brought to enforce the same or other consistent rights but not to enforce other inconsistent rights. And, of course, there is no election when inconsistent rights are proceeded on at the same time. An election once made is irrevocable. It differs from the various classes of estoppel proper and rests on the principle that one can·not occupy inconsistent positions.

ID.—*of right to proceed on theory of absolute sale by bringing lien suit, precludes proceeding on theory of conditional sale by replevin.*

In the case of a conditional sale, the vendor may waive the condition and treat the sale as absolute, as, by instituting a materialman's lien suit based on the theory that the title has

passed to the vendee, but if he so elects with knowledge of the facts he cannot afterwards treat the sale as conditional, as, by bringing replevin based on the theory that the property is still in him. Such is the result, even though the lien suit could not have been carried to judgment with success, for in such case the elec- tion is between the existing inconsistent rights to proceed on the theory that the title has passed and to proceed on the theory that is has not passed; it is not merely between a supposed but non- existing remedy by lien suit and an existing remedy by replevin.

ID.—*cannot be made to treat sale conditional in part and absolute in part.*

The bringing of the lien suit bars the action of replevin even though only a portion of the items covered by the contract and for which the lien suit was brought are lienable.

OPINION OF THE COURT BY FREAR, C.J.

This is a petition for a rehearing of the case decided *ante,* page 418. The action is replevin for rails, cars, etc., claimed to have been sold by the plaintiff on the condition that title should remain in it until payment. The court held that even if title were to remain in the plaintiff until payment still the plaintiff could not maintain replevin, which is based on the theory that the title was in it, for the reason that it had pre viously elected an inconsistent right by bringing an action for the price and to enforce a materialman's lien, which was based on the theory that the title had passed to the vendee.

For the purposes of the original decision it was assumed that the contract was one of conditional sale or, perhaps more accu- rately speaking, that it was an executory contract to sell upon condition precedent. We will proceed upon that assumption for the purposes of the present decision also, although it may not be out of place to state that in the opinion of a majority of the court the sale was absolute and therefore replevin could not be maintained in any event.

The petition sets forth seven grounds, all of which were either considered by the court or not raised by counsel at the original hearing. They may be summed up as follows: (1) That the

court should have decided, but did not do so, whether the plaintiff is entitled to a new trial as regards the items which, by reason of not having become attached to the realty, were not subject to a materialman's lien, and (2) that the court overlooked or did not give due consideration to certain points bearing upon the question whether the institution of the materialman's lien suit amounted to an election.

As to the first of these grounds, the court merely reversed the judgment of the trial court and remanded the case for such further proceedings as might be proper, not knowing whether the plaintiff would be able to introduce further evidence bearing on the question of election which would make it worth while to have a new trial. Apparently the plaintiff knows of no other evidence that it can introduce upon that question but now asks the court to decide whether the election manifested by the institution of the lien suit extended to all the items covered by the contract or only to the lienable items. It was unnecessary to pass upon this as a primary question in the original opinion but it was passed upon incidentally by inference from the reasoning in that opinion. It goes without saying that the plaintiff could not elect to treat the sale as absolute as to part of the property covered and conditional as to the remainder. The lien suit was in fact instituted as to all the items.

As to the second ground, it will be unnecessary to discuss in detail all the points raised by counsel, for to do that would mean largely a repetition of what was said with more or less fulness in the former opinion upon the doctrine of election and its application to the facts of this case. It will be sufficient to refer to a single point in regard to which counsel for the plaintiff seems not fully to understand the former opinion. As shown in that opinion the election is not so much between remedies as between rights. The election in this case was between the right of the plaintiff to proceed upon the theory that the sale was conditional and that the title remained in it until payment, and the right to proceed on the theory that the sale was

absolute and that the title had passed to the vendee, the plaintiff
having a choice between such rights if the contract was one of
conditional sale. The election was between the right to the
property on the theory of conditional sale and the right to the
purchase price on the theory of absolute sale. It was not, as
contended by the plaintiff, between a remedy by lien suit and a
remedy by replevin. An election is an unequivocally mani-
fested choice between two or more inconsistent rights. The
pursuit of a particular remedy is the manifestation of the
choice between the rights. If two rights exist the choice may
be manifested by the institution of an action, whether the
action is or could be carried to completion with success or not.
If the action is discontinued or fails of success the plaintiff may
pursue other consistent remedies, that is, other remedies based
on the same or a consistent right, but not other inconsistent
remedies, that is, remedies based on an inconsistent right. If
there is in fact only one right the institution of any number
of actions on supposed but nonexisting other inconsistent rights
will not amount to an election or prevent the institution after-
wards of an action upon the only right that does exist. Like-
wise, if there are in fact two inconsistent rights and an action
is brought on one under a mistake of fact and discontinued upon
obtaining knowledge of the facts, there will be no election and
the other inconsistent right may afterwards be proceeded upon,
provided there are no elements of an estoppel in pais, as, for
instance, prejudice to the other side. In the present case the
plaintiff might have elected to rely on the right of property in
itself under a conditional sale by bringing any one of several
actions, as, for instance, replevin, trespass, detinue, etc., or
it might have manifested its election to proceed on the theory of
an absolute sale and property in the vendee by bringing a lien
suit or an action of assumpsit accompanied by attachment, etc.,
or it might have brought an action which would be consistent
with either right and not amount to an election, as, for instance,
a simple action of assumpsit for the purchase price. Under
some circumstances a mere action of assumpsit would show an

election, but not in this case because of the special provisions of
the contract. See former opinion and cases there cited. Also
*Typograph Co. v. Macgurn,* 119 Mich. 533. These principles
are set forth more fully in the former opinion and cases there
cited, and also in 15 Cyc. 251 et seq., and numerous recent cases
there cited, which volume has been received since the former
decision was rendered. The following quotations are from this
volume:

"An election of remedies is the choice by a party to an action
of one of two or more coexisting remedial *rights.* . . .
All actions which proceed upon the *theory that the title to prop-
erty remains in plaintiff* are naturally *inconsistent with* those
which proceed upon the *theory that title has passed to defendant.*
But there is no inconsistency between different legal remedial
*rights,* all of which are based upon claim of title to property in
plaintiff or all of which are based upon the affirmance of title
in defendant. . . . The prosecution of one remedial
*right* to judgment or decree, whether the judgment or decree
is for *or against plaintiff,* is a decisive act which constitutes a
conclusive election, barring the subsequent prosecution of incon-
sistent remedial *rights.* . . . By preponderance of
authority the *mere commencement of any proceeding to enforce
one remedial right,* in a court having jurisdiction to entertain
the same, is such a decisive act as constitutes a conclusive elec-
tion, barring the subsequent prosecution of inconsistent reme-
dial *rights.* . . . In order to constitute a binding elec-
tion the party must at the time the election is alleged to have
been made have knowledge of the facts from which the coexist-
ing, inconsistent remedial *rights* arise. . . . A person
who prosecutes an action or suit based upon a remedial *right*
which he erroneously supposes he has, and is defeated because
of the error, has not made a conclusive election, and is not pre-
cluded from prosecuting an action or suit based upon an incon-
sistent remedial *right.* . . . An election once made, with
knowledge of the facts, between coexisting remedial *rights*
which are inconsistent is irrevocable and conclusive, *irrespec-
tive of intent* [*Clausen v. Head,* 110 Wis. 405], and constitutes
an absolute bar to any action, suit, or proceeding based upon a
remedial *right* inconsistent with that asserted by the election."
The italics are ours.

The plaintiff contends that the election was merely between the remedy by replevin and the remedy by lien suit and that since, as it contends, the lien suit would have been ineffectual, there could not have been an election because there were not two remedies to elect between. But, as shown above, the question is whether there were two or more inconsistent remedial rights, not whether, if there were two such rights, a particular proceeding adopted by the plaintiff to enforce one of them would have been successful. Even if the lien suit had been carried to completion and had failed of success there might still have been an election. See above quotation; also *Renne v. Townsend,* 100 N. W. (Ia.) 48; also *Hickman v. Richburg,* 122 Ala. 638, cited in the former opinion, holding that the bringing of a materialman's lien suit, even though it must necessarily have been ineffectual, amounted to an election and an abandonment of the title reserved on the sale.

It is true that there is more or less confusion in the books in the use of the words "remedies" and "rights" in connection with the doctrine of election, but in general it will be found upon an examination of the cases that where it is held that no election has been made, either there was in fact no right, although one was supposed to exist, for the enforcement of which the action claimed to manifest an election was instituted, or if there was such a right the action was instituted under a msitake of fact, or proceedings were brought on two or more inconsistent rights at the same time, in which case, of course, there was no election. Still, most of the cases speak of rights or causes of action as distinguished from mere forms of action. For instance, in *Snow v. Alley,* 156 Mass. 193, upon which the plaintiff relies, the court, by Mr. Justice Holmes, said:

"Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice. . . . But the fact that a party wrongly supposes that he has two such rights and attempts to choose the one to which he is not entitled, is not enough to prevent his exercising the other, if he is entitled to that."

In *Butler v. Hildreth,* 5 Met. 49, cited in *Snow v. Alley,* the court said, by Chief Justice Shaw:

"The assignee has an election, not of remedies merely, but of rights. But an assertion of one is necessarily a renunciation of the other. This results from the plain and very obvious consideration, that the assignee cannot affirm the sale in part and disaffirm it in part; if it is to stand as a valid sale the property of the goods remains vested in the purchaser and he remains liable for the price. But if the sale is avoided and set aside, it stands as if it had never been made. . . . What action on the part of the assignee is to be taken as proof of his election? . . . We think that if the assignee commences an action against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale but by necessary implication affirms it."

It thus seems that there may be an election not only when the action instituted has not been carried to completion but also when it has been carried to completion unsuccessfully. It is unnecessary, as intimated in the former opinion, to say definitely whether the lien suit could have been carried to completion successfully or not, and in *Johnson-Brickman Co. v. Mo. Pac. R. Co.,* 126 Mo. 344, cited by the plaintiff, it was held that where the action was not carried to completion neither the trial court nor the appellate court could determine whether it could have been carried to completion with success,—although the court gave this as one of the reasons why it should hold, as it did, that the commencement of an action accompanied by an attachment, if not carried to judgment, would not amount to an election so as to prevent a subsequent action of replevin, which ruling it must be conceded is contrary to the views expressed in our former opinion, but which also in our opinion is contrary to the great weight of authority and to cases referred to by that court and is based upon a confusion as to rights and remedies and upon the idea that to constitute an election there must exist facts amounting to an estoppel in pais. Election differs from the various classes of estoppel and rests on the principle that one cannot occupy inconsistent positions. Whether

the conclusion reached by that court was nevertheless correct on the ground that the first suit was brought under a mistake of fact no opinion need be expressed.

The petition for a rehearing is denied.

*Kinney, McClanahan & Cooper, S. H. Derby* and *C. A. Galbraith* for plaintiff.

*J. W. Cathcart* and *Castle & Withington* for defendant.

### CONCURRING OPINION OF HARTWELL, J

The decision in this case was based upon the theory of a conditional sale, although the court did not say that they regarded the transaction as of that nature. It is only on the theory that the sale was conditional that the question of election can arise.

The facts are as follows: February 12, 1900, the plaintiff agreed to "furnish" to the Kona Sugar Co. and the company agreed to accept in Honolulu certain railway material and equipment at stated prices to be delivered at stated times upon payment of drafts accompanying bills of lading. This agreement was not executed, as the drafts were not paid and the property remained for many months in the plaintiff's possession in Honolulu.

March 13, 1901, the plaintiff agreed with the company that upon payment on the following day of $10,000 with the company's promissory note for $37,044.53 payable in six months with interest at 7½ per cent., secured by its first mortgage bonds of that amount it would deliver to the company "the bills of sale authorizing you to take charge of the rails, locomotives, cars, scales and other materials now awaiting delivery, upon the express condition and understanding that said rails, locomotives, cars, scales and other materials are and shall remain the property of William W. Bierce, Limited, until the full payment of the note above described, according to its terms." This was done and the plaintiff "released the bills of lading from the drafts," the railroad equipment "was removed from Honolulu to Kona and the railroad of the Kona Sugar Co. was con-

structed." The note was not paid September 14, 1901, when due or afterwards. February 17, 1902, a receiver of the company was appointed who took possession of its property and carried on the business of its plantation, the company "continually getting deeper into debt and becoming more and more hopelessly insolvent." May 12, 1902, the plaintiff filed in the circuit court a notice of its lien on the railroad equipment and August 1, 1902, nearly a year after the note was defaulted, brought suit against the company and its receiver to enforce the lien, which in January, 1903, it discontinued, and afterwards brought this action of replevin.

By the second agreement the property remained the plaintiff's subject to payment of the note at maturity, upon the happening of which event the company would have become its owner. Upon non-payment of the note the plaintiff had the undoubted right to claim the property as its own and the equally undoubted right, notwithstanding the non-payment, to hold the company as a purchaser, in the latter case treating the agreement as executed instead of executory, but the two rights being directly inconsistent with each other, both of them could not be exercised either concurrently or successively.

The civilians would have applied to this case the maxim "allegans contraria non est audiendus," meaning that a man shall not be permitted to "blow hot and cold." If when the plaintiff brought this lien suit it knew that the bonds it held as collateral security for the unpaid purchase money were absolutely of no value, as afterwards was shown, then as a matter of common business sense it would have claimed the property as its own and as not sold to the company, and would not have claimed that it was sold as was necessary to do in bringing a lien suit. It is to be inferred therefore that the plaintiff then considered that it was for its interest to treat the company as a purchaser in order to get some benefit from the bonds. There was no other possible reason for a lien suit, for if successful it could only have secured to the plaintiff a judgment which would be a preferred claim on the company's plantation;

whereas by claiming that the property was unsold it was the property and nothing else which was obtained. Later on, when no other change had occurred in conditions than resulted from the evident worthlessness of the bonds, the plaintiff discontinued its lien suit and claimed then for the first time that under the agreement the property had not been sold. The reason of the rule expressed in the maxim above cited is that when a right may be acquired by asserting it· and by such assertion is acquired, the assertion cannot be withdrawn in order to establish an inconsistent right. The lien suit was a formal avowal made in court of the plaintiff's election to treat the transaction as a sale, and it was in no other way than by such avowal or its equivalent that the transaction could have become a sale. On principle it might seem that if the plaintiff simply sent to the Kona Sugar Co. .a letter stating that it would hold it liable as a purchaser, this would have been an unequivocal exercise of its right to regard the property as sold, and would suffice to vest in the plaintiff the rights of a seller, and in the company the right as well as the liability of a buyer, which rights the plaintiff could not afterwards change to suit its· convenience. The cases, however, do ·not appear to go to that extent, although *Woodley v. Coventry,* 2 H. & C. 164, very nearly does so. In that case the defendants had sold 350 barrels of flour, to be taken from a larger quantity, to one Clarke who obtained advances of the plaintiff on the security of the flour and gave the plaintiff a delivery order on the defendants. The plaintiff sent the order to the defendants' warehouse and left it there, the clerk saying "It is all right." The plaintiff sold the flour to different persons and the defendants delivered part, but Clarke becoming bankrupt, refused as unpaid vendors to deliver any more. The plaintiff brought trover and it was contended for the defendants that by their contract with Clarke no property had passed, because the sale was not of any specific flour. The court held that the defendants were estoppel from denying that the property had passed.

If a vendor proposes to reclaim property on the ground that it is forfeited to him for non-payment of purchase money his claim should be made clearly and seasonably, and any act of his from which the buyer might properly infer that he did not claim the forfeiture would be an act beyond his recall. Non-performance of the condition subsequent would not per se work a forfeiture, but only upon the vendor's assertion that he claimed it. The condition once waived cannot be revived. But in the case of an executory agreement to sell, the property to pass to the buyer only upon his performance of a condition precedent, namely, upon payment, non-payment does not per se work a forfeiture of any right acquired by the intending buyer, for his only right is to acquire the property upon paying for it.

But in the one case as in the other, unequivocal words or conduct of the seller showing that he does not treat the property as forfeited or as unsold, and does treat it as sold, would preclude him from afterwards setting up the inconsistent claim that he owned the property and had not sold it. The plaintiff having exercised its option of affirming the transaction as a sale cannot disaffirm its own act.

I concur in the opinion of the court that the case ought not to be reheard.