# WILLIAM W. BIERCE, LIMITED, *v.* WILLIAM WATER- HOUSE AND ALBERT WATERHOUSE, EXECU- TORS UNDER THE WILL AND OF THE ESTATE OF HENRY WATERHOUSE, DECEASED.

## EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MARCH 8, 9, 1909.                    DECIDED APRIL 12, 1909.

### HARTWELL, C.J., WILDER AND BALLOU, JJ.

PRINCIPAL AND SURETY—*discharge of surety by variation of risk.*

The plaintiff in a replevin action having alleged in its decla- ration and replevin bond the actual value of the property replevied to be $15,000, and the defendant in that action having given a return bond in double the amount reciting the valuation as alleged, subsequent amendments whereby the plaintiff increased the valua- tion to $22,000 and recovered alternative judgment for that amount are a variation of the risk of the sureties on the return bond and discharge them from liability.

OPINION OF THE COURT BY BALLOU, J.

(Wilder, J., dissenting.)

This is a bill of exceptions to review a judgment against the defendants, as executors of the will of Henry Waterhouse, upon a return bond in a replevin action executed by Henry Water- house as surety.

The replevin action was brought by the plaintiff against Clin- ton J. Hutchins, trustee, on July 20, 1903, and was for the recovery of certain railway material which had been used by

the Kona Sugar Co., Ltd., the property of which corporation had been bought by Hutchins at a receiver's sale. Plaintiff alleged in its declaration that the actual value of the property was $15,000 and filed its affidavit in conformity with R. L. Sec. 2102, then Civil Laws, Sec. 1695, alleging, in conformity with the statutory requirement of "the actual value of the property" that the actual value of the property was $15,000 and tendered its bond in double that amount. Hutchins thereupon elected to retain possession of the property under R. L. Sec. 2112 by giving the return bond upon which the present action is founded which reads as follows:

CIRCUIT COURT, THIRD CIRCUIT.

TERRITORY OF HAWAII.

WILLIAM W. BIERCE, LIMITED,
         a Corporation,
                    Plaintiff.
              v.
CLINTON J. HUTCHINS, TRUSTEE.
   ($1.00 stamp)

} Replevin.

RETURN BOND.

KNOW ALL MEN BY THESE PRESENTS:

That we Clinton J. Hutchins, Trustee, as principal and Henry Waterhouse and Arthur B. Wood as sureties are held and firmly bond unto William Bierce Company, Limited, its successor or successors and assigns in the sum of Thirty Thousand (30,000) Dollars for the payment of which well and truly to be made, we bind ourselves, our successors herein and administrators jointly and severally firmly by these presents.

The condition of the foregoing obligation is as follows:

That whereas the said William W. Bierce, Limited, has begun in the Circuit Court of the Third Circuit of the Territory of Hawaii, a replevin suit against Clinton J. Hutchins, Trustee, to recover from him certain property specifically set forth in the bill of complaint filed in said suit, and of the value of $15,000

as stated in the affidavit filed therein, and has requested that the said property be taken possession of by the High Sheriff of the Territory of Hawaii, or his deputies and turned over to said plaintiff; and whereas said defendant is desirous of having said property returned and has required the return thereof from said High Sheriff and his deputies;

Now therefore if the said property and all thereof shall be well and truly delivered to said plaintiff, if such delivery be adjudged, and payment to said plaintiff be well and truly made of such sum as may, for any cause be recovered against the defendant, then this obligation to be null and void, otherwise to be and remain in full force and effect.

In Witness Whereof we have hereunto set our hands and seals this 21st day of July, A. D. 1903.

Clinton J. Hutchins,
Trustee.
Henry Waterhouse,
Surety.
Arthur B. Wood,
Surety.

The foregoing bond is approved as to its sufficiency of sureties. Dated July 21, 1903.

A. M. Brown, High Sheriff.

(Endorsed:) Filed, August 1st, 1903, 7 o'clock A. M.   J. P. Curts, Clerk.

Before going to trial plaintiff amended his declaration by increasing the allegation of the actual value of the property from $15,000 to $20,000, which amendment was allowed by the court March 7, 1904, and at the close of his case by again increasing the value to $22,000, which amendment was allowed March 19, 1904. The case was tried jury waived, and plaintiff recovered judgment for the return of the property with $1045 damages and $50.50 costs, with an alternative judgment in case of failure to return for $22,000, the adjudged value of the property, with the same damages and costs. Certain exceptions brought by the defendant Hutchins were sustained by this court, the decision being rendered January 28, 1905. *Bierce v. Hutchins,* 16 Haw. 418. At that time this was the court of final ap-

peal in the case, no federal question being involved. On March 3, 1905, an act of congress was passed allowing appeals from this court in cases involving over $5000. (33 Stat. 1035, c. 1465, sec. 3.) After a petition for rehearing decided April 29, 1905 (*Bierce v. Hutchins,* 16 Haw. 717), the plaintiff stated that it would have no further evidence to present if the case were remanded and asked that a judgment remanding with directions to enter judgment for the defendants, be entered in this court which, in the absence of objection from the defendant in that action, was done. An appeal from this judgment was allowed by the Supreme Court of the United States and the judgment reversed. *Bierce v. Hutchins,* 205 U. S. 340. This court then held that the defendant in that action was entitled to a hearing upon exceptions not passed upon at the first hearing (*Bierce v. Hutchins,* 18 Haw. 374) but after hearing overruled the exceptions. (*Bierce v. Hutchins,* 18 Haw. 511.) An appeal from this decision was dismissed (*Hutchins v. Bierce,* 211 U. S. 429, December 14, 1908).

Meanwhile Henry Waterhouse had died February 20, 1904, and the present defendants qualified as his executors. After the trial of the replevin action the plaintiff caused execution to be issued April 15, 1904, notwithstanding the pendency of the defendant's exceptions. The statute allowing this procedure upon good cause shown (R. L. Sec. 1861) had been passed April 22, 1903, before the execution of the bond now sued upon, but went into effect August 1, 1903, the day the bond was filed and a few days after its execution. The execution having been returned unsatisfied, the present action, joining Hutchins, Wood and the executors of Henry Waterhouse as defendants, was filed on October 11, 1904, at which time the exceptions in the replevin action were pending in the Supreme Court of the Territory. A demurrer was overruled and the defendants answered. Before the case was brought to trial the Supreme Court of the Territory sustained the exceptions in the replevin action where-

upon the defendants in the action on the bond pressed for trial, but continuances were granted by the court until after the first decision of the Supreme Court of the United States and the subsequent overruling of the remaining exceptions by this court. Upon a suggestion of misjoinder plaintiff discontinued as to Hutchins and Wood and proceeded solely against the Waterhouse executors. The case was tried before a jury in May, 1908, the principal issue of fact being whether or not there had been an actual redelivery of the property in April or May, 1904, after the judgment of the circuit court. The jury found for the plaintiff for the sum of $22,000 with interest at six per cent. from April 15, 1904, also for the sum of $748.57 with interest at eight per cent. from September 27, 1907, the aggregate of principal and interest being $28,156.74. The smaller item was composed of costs in the United States Supreme Court and of costs in the Supreme Court of the Territory, the damages in the replevin action having been paid.

The bill of exceptions brings up 127 exceptions, most of which were argued and relied upon. Many of these, however, relate to the same points, the principal defenses of the sureties being that they were discharged by the amendment to the local statute allowing execution to issue in certain cases pending exceptions; that they were discharged by the amendment to the Organic Act allowing an appeal to the Supreme Court of the United States in cases involving over $5000; that they were discharged by plaintiff's successive amendments to its declaration whereby the alleged value of the property was increased from $15,000 to $22,000; that the suit was prematurely brought against these executors; and that the law laid down by the trial court as the obligor's duty to return the property after judgment was inapplicable and misleading in view of certain correspondence in which Hutchins purported to deliver the property with certain conditions, which delivery was accepted by the plaintiff upon other conditions.

Bierce v. Waterhouse, 19 Haw. 398.

We find it necessary to consider only those exceptions which go to the amendments of value made by the plaintiff. This defense of the sureties is based upon the fact that the plaintiff in its replevin affidavit swore that the actual value of the property was $15,000, which fact is recited in the condition of the redelivery bond, the plaintiff's declaration containing the same allegation. After the execution of the bond the plaintiff amended the allegation in his declaration first to $20,000 and afterwards to $22,000. The prayer of the declaration was for judgment for the return of the property, with damages for detention and costs, but according to the practice in replevin, by which an alternative cash judgment for the value of the property was rendered in default of the return of the property, the amendments amounted to an increase of the ad damnum, and the sureties claim that this is an alteration of their contract, and an increase in the risk assumed by which they are discharged from liability.

The question thus raised is one of considerable difficulty, and one on which the decisions are conflicting. The contract of the surety may be with reference to another contract, usually called the principal contract, between the principal and a third party, as a bond to secure the performance of a building contract; or on the other hand it may be with reference merely to an undertaking of the principal, as a bond that he will appear in court or that he will pay a judgment which may be rendered against him. The rule that any "alteration in the contract" releases the surety is frequently stated, but it is not always clear whether the contract referred to is the principal contract or the bond of the surety, or whether in the case of a surety for an undertaking the word contract is not used to mean either existing circumstances or the terms upon which performance may be demanded. In the case of a surety upon a contract any alteration in the principal contract releases the surety, the commonest case being an agreement between the principal and the third party modifying the terms of the principal contract. *United States v. Freel,*

186 U. S. 309. Another kind of "alteration of contract" is an alteration made on the face of the bond itself (*Martin v. Thomas,* 24 How. 315; *Smith v. United States,* 2 Wall. 219) or upon the face of an instrument referred to in the bond. *Miller v. Stewart,* 9 Wheat. 680. In the latter case, the instrument appointing a deputy collector was altered by the addition of a ninth township to the eight specified. The court lays some stress upon the alteration being on the face of the instrument, but the case has been widely cited and applied where there was no such technical alteration, but where a modification of the duties of the principal or of the terms of the undertaking guaranteed by the sureties has been held to be an alteration of the contract. Thus in *Reese v. United States,* 9 Wall. 13, the bond was for the appearance of a defendant at a designated term of court in San Francisco "and at any subsequent term to be thereafter held in that city." A stipulation between the district attorney and defendant's counsel, approved by the court, that the case should be brought to trial only after final decrees in certain civil actions and provided they were against defendant was held to discharge the sureties, the court saying:

"It is true, the rights and liabilities of sureties on a recognizance are in many respects different from those of sureties on ordinary bonds or commercial contracts. The former can at any time discharge themselves from liability by surrendering their principal, and they are discharged by his death. The latter can only be released by payment of the debt or performance of the act stipulated. But in respect to the limitations of their liability to the precise terms of their contract, and the effect upon such liabiliy of any change in those terms without their consent, their positions are similar. And the law upon these matters is perfectly well settled. Any change in the contract, on which they are sureties, made by the principal parties to it without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even

that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking."

Here there was no alteration in the sureties' contract, and there was no contract, in the ordinary sense of that word, between the defendant and the district attorney which was subsequently altered. There was a modification, by proper authority, of the terms of the principal's undertaking to appear, which was held to be an entire discharge of the contract of the sureties. We dwell on this distinction because the use of the word contract in this connection appears to be the source of some confusion. In *United States v. Backland,* 33 Fed. 156, for example, the "contract" held to be changed had been fulfilled. A more accurate statement of the effect of the decisions of the Supreme Court is as follows:

"They have decided that the surety is discharged not merely by payment of the debt or a release of the principal, but by any material change in the relations between the principal and the party to whom he owes a debt or duty; and that the surety cannot be held in such case by showing that the change was not injurious to him. For he had a right to judge for himself of the circumstances under which he was willing to be liable, and to stand upon the very terms of his contract." 2 Parsons Contracts *17.

Upon the precise question of the effect of an increase of the ad damnum upon a bond previously executed there is a conflict of authority. The majority of the cases hold the sureties are not discharged. Thus in *New Haven Bank v. Miles,* 5 Conn. 587, where the defendant had been arrested in a civil action and the bail bond was conditioned only for his appearance in court, an increase from $600 to $1200 was held not to discharge the sureties, the court holding that they assumed the risk of all amendments allowed by statute. In *Carr & Hobson v. Sterling,* 114 N. Y. 558, another case of arrest on civil process, the undertaking provided that the defendant "shall at all times render himself amenable to any mandate which may be issued to enforce final judgment against him in the action." The ad dam-

num was increased from $7000 to over $13,000 and after judgment by default the sheriff returned "defendant not found." The surety was held liable, but there is no distinction taken between the rights of the surety and those of the principal. In these two cases there was no undertaking in the bond to pay the amount of the judgment recovered.

In *Hare v. Marsh,* 61 Wis. 435, an amendment of the ad damnum in the justice's court on an action of tort to an amount in the circuit court beyond the justice's jurisdiction was held not to release the surety on the bond given to stay execution pending the appeal, the undertaking of the bond being to pay any judgment remaining unsatisfied. The court says: "The undertaking presupposes the exercise of such authorized judicial powers as should be called into action in the case. The contract was impliedly, if not expressly, with reference to such exercise of judicial power." Exactly the opposite result was reached in *Evers v. Sager,* 28 Mich. 47, although there is a dictum to the effect that the sureties would have been bound had the amendment been within the power of the court irrespective of stipulation. In Massachusetts a statute (Pub. Sts. c. 167, sec. 42) is construed as binding sureties in the event of amendments, provided it appears that the amended cause of action is the same as that relied on by the plaintiff when the action was commenced, however the same may be misdescribed. If the sureties are notified of the proposed amendment they are bound by its allowance, subject to exception or appeal, if not notified they are still liable if it appears that the adjudication was correct, and the court may go outside the record and receive oral testimony as to what was the cause of action intended to be relied on when the suit was commenced. *Driscoll v. Holt,* 170 Mass. 262. The issue under this statute is therefore merely whether a new cause of action has been introduced, and decisions upon one side or the other (*Prince v. Clark,* 127 Mass. 599; *Townsend Bank v. Jones,* 151 Mass. 454) are not helpful. In Maine an increase

of the ad damnum upon the same demand discharges the sureties upon a bond given with reference to the action (*Langley v. Adams,* 40 Me. 125), and the same principle was applied where the creditor, without amendment, took judgment in excess of his ad damnum. *Ruggles v. Berry,* 76 Me. 262.

The only principle that can be deduced from the cases holding the sureties liable is that sureties on judicial bonds, as distinguished from sureties on private contracts or undertakings, contract with knowledge of the power of the court, under statute or otherwise, to make amendments, and must be presumed to take the risk of such amendments even if their liability is thereby increased. If this principle is sound it would be of much wider application than cases of the increase of ad damnum, yet outside that field it is seldom recognized and the distinction generally denied. Brandt, Suretyship, Sec. 511; *Reese v. United States,* quoted above. One of the most common amendments under statutes is the substitution of new parties, and yet this is generally held to discharge the sureties. *Richards v. Storer,* 114 Mass. 101; *Tucker v. White,* 5 Allen 322: Contra, *Jamieson v. Capron,* 95 Pa. St. 15. The correction of an error in the description of the property replevied as the substitution of "north-east" for "south-east" in the quarter section from which logs were cut is well within the power of amendment, but discharges the sureties. *Bolton v. Nitz,* 88 Mich. 354. The surety on a judgment for alimony or on a temporary injunction knows that it may be modified by the court, yet he is discharged by such modification. *Sage v. Strong,* 40 Wis. 575; *Tyler Mining Co. v. Last Chance Mining Co.,* 90 Fed. 15. Sometimes, of course, the language of the bond, by fair construction, shows that subsequent increase of risk has been assumed as where the condition that a distiller "shall in all respects faithfully comply with all the provisions of law," etc., has been held to signify an intention to stipulate that the principal should comply with duties subsequently imposed by law. *United States v. Powell,* 14 Wall. 493.

The rule of strictissimi juris has been said to be a stringent one, and liable at times to work a practical injustice. With regard to subsequent amendments in judicial proceedings we should hesitate to apply it except when it resulted in a variation of risk which was plainly outside the contract of the sureties. Even an increase of the ad damnum might not have that effect, as when the cause of action is certain drafts with interest thereon, and the ad damnum is increased to cover interest subsequently accruing. *Townsend Bank v. Jones,* 151 Mass. 454. Here the surety was fairly apprised of his risk at the outset and the amendment was to satisfy legal formality. The case at bar is quite different. It is impossible to read the bond without inferring that the value therein recited, fixed by the plaintiff itself, was part of the material inducement upon which the sureties assumed the risk. The responsibility for "such sum as may for any cause be recovered against the defendant" evidently refers to recovery upon the action recited. *The Oregon,* 158 U. S. 186, 206. The risk in this case was to be responsible for the return of property, of a specified value, or in default thereof for the payment of a judgment for its value, together with damages, interest and costs. The penal sum of the bond, $30,000, was the limit of the risk, not the risk itself. The subsequent amendments were not the exercise of a judicial power for which neither party was responsible, but the voluntary act of the obligee, the allowance by the court being formal and largely controlled by statute. R. L. Sec. 1738. By these amendments, in this case made after the death of the surety whose estate is now sought to be charged, the plaintiff increased the risk of the sureties nearly fifty per cent., and actually obtained a judgment for $22,000 with damages and costs. We are of the opinion that this increase of liability was outside the contract of the sureties and that they are discharged.

The exception to the overruling of defendants' motion for judgment non obstante veredicto, in so far as it is based upon

Bierce v. Waterhouse, 19 Haw. 398.

their discharge from liability by the plaintiff's amendments of value, is sustained. The remaining grounds of the motion and the remaining exceptions not necessarily involved are not passed upon.

*A. G. M. Robertson* for plaintiff.

*A. Lewis, Jr., D. L. Withington* and *John W. Cathcart* (*Smith & Lewis, Castle & Withington* on the briefs) for defendants.

### DISSENTING OPINION OF WILDER, J.

The surety in this case agreed to pay "such sum as may, for any cause, be recovered against" Hutchins. The limit of that obligation was stated in the bond to be $30,000. Plaintiff having recovered against Hutchins the sum of $22,000, the surety is bound by his obligation to pay that sum. The conclusion of the majority of the court that the surety is discharged is based on the assumption that the surety's risk was increased by the amendments in the replevin action raising the value of the property from $15,000 to $22,000. That assumption very properly requires that the risk or obligation of the surety should be stated differently from what it is in the bond under the statute. If the obligation of the surety was as stated by the majority, then the conclusion they reach logically follows. If, on the other hand, it was as stated in the bond and in the statute, that conclusion does not and cannot logically follow. To be sure the obligation and the limit of that obligation are different things. The obligation is to pay such sum as may be recovered, while the limit provides that in no event can that sum, so far as the surety is concerned, be more than $30,000.

From the cases referred to by the majority it appears that the courts in Massachusetts, Connecticut, New York, Wisconsin, Pennsylvania and, possibly Michigan, to which should be added Ohio, Indiana and Vermont, (*Jaynes v. Platt,* 47 Oh. St. 262; *Sherry v. Bank,* 6 Ind. 397; *Wright v. Brownell,* 3 Vt. 436,) would hold that in this case the surety was not discharged, while in Maine it would be held the other way. The two cases

of *Sage v. Strong*, 40 Wis. 575, and *Tyler Mining Co. v. Last Chance Mining Co.*, 90 Fed. 15, are easily distinguishable from the case at bar. In the first one the surety obligated himself to see that a judgment which had already been rendered would be paid, while in the second case the obligation of the surety was to pay any damages caused by an injunction which had already issued. The surety in each case knew when he signed the bond that the judgment or injunction could be modified by the court, but he never agreed to be bound by a modification any more than he agreed to be bound in case a different judgment or injunction was thereafter entered. That is something entirely different from the case where a surety knows when he executes the bond that he is to be liable if at all to pay a judgment to be rendered in the future and, it must be remembered, in the usual course of procedure, which would include amendments of the kind made.

The majority opinion being in my opinion contrary to both principle and the great weight of the decided cases, I am compelled to dissent therefrom.